**Fred RUSSELL, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–99–073–CR.**

Court of Appeals of Texas, Waco.

March 7, 2001.

---

**2.** Justice O'Connor's term of office expired December 31, 2000.

William T. Hughey, Hughey & Campbell, Dallas, for appellant.

Patrick C. Batchelor, Navarro County District Attorney, Damara H. Watkins, Navarro County Asst. Criminal District Attorney, Corsicana, for appellee.

Before Chief Justice DAVIS, Justices VANCE, and GRAY.

## OPINION

GRAY, Justice.

Fred Russell, Jr. was convicted by a jury of the felony offense of failure to stop and render assistance after a plea of not guilty. The jury sentenced him to five years imprisonment. On appeal, he contends that: (1) the trial court erred in not sustaining his objection to the court's expansion of the necessity definition in the jury charge, and (2) the trial court erred in not granting his request for a mistrial following an improper question by the State. We affirm the judgment of the trial court.

### Facts

On December 14, 1997 at approximately 3:00 a.m., Russell and Tim Cavender were involved in an auto accident. James Roberson testified that, shortly before the accident, he had watched Russell and Cavender pass and weave around each other until they traveled out of his sight, disappearing over a hill. As Roberson topped the hill, he could see some lights facing in his direction, however, the car was in the ditch next to the right shoulder of the highway. The car slowly proceeded down the shoulder of the road, then moved onto the road and left. As the other car left, Roberson saw a body lying motionless in the road. Police later identified the body as that of Tim Cavender. There was also a weapon found at the scene. The car that fled the scene was later identified as that belonging to Russell. Russell was charged with the failure to stop and render aid.

Russell testified that Cavender had pulled up beside him on the highway holding something in his hand. Russell stated that he was afraid for his life because it looked like some type of gun. The investigating officer testified that apparently Cavender had made an abrupt lane change to the right, passing in front of Russell's vehicle. As Cavender passed in front of Russell, he crossed over too far causing his pick-up to skid in front of Russell's car. Russell tried to brake but he was unsuccessful and hit Cavender's pick-up while it was almost sideways. Cavender's pick-up traveled sideways for approximately 240 feet turning over twice, throwing Cavender from the vehicle.

### Issue 1: Definition of Necessity

■ In his first issue, Russell argues the trial court erred in not sustaining his objection to the court's expansion of the necessity definition in the jury charge.

The record indicates that Russell tendered to the trial court language for the "defense of necessity." The State made no objections and the trial judge stated that he had no problems with the particular language offered by the defense. However, the judge thought that the necessity charge needed an additional instruction. Russell's attorney objected to this addition arguing that the trial court's instruction was not consistent with the statutory definition of necessity.

■ When reviewing alleged errors in the jury charge, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *see also Gibson v. State*, 726 S.W.2d 129, 132 (Tex. Crim.App.1987). Thus, we must first determine whether there was in fact charge error as a result of the trial court's additional instruction regarding the availability of the necessity defense.

The Penal Code defines the defense of necessity as follows:

Conduct is justified if:

(1) *the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;*

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX.PEN.CODE ANN. § 9.22 (Vernon Supp. 2001) (emphasis added). The language in the charge tracked subsections (1) and (2)

of the necessity statute. The charge also included a definition and instruction relating to "reasonable belief." Additionally, the trial court included the following instruction:

This defense of justification or necessity is not available if the risk of eminent [sic] harm reasonably appreciated by the actor has ceased to exist at the time the alleged unlawful conduct occurred.

Russell argues that the Court's instruction was not part of the necessity definition but was instead the Court's opinion of the testimony presented, and thus, a violation of Article 36.14. *See* TEX.CODE CRIM.PROC. ANN. art. 36.14 (Vernon Supp.2001). In particular, Russell contends that the Court's expansion of the definition is in essence: (1) expressing an opinion as to the weight of the evidence; (2) summing up the testimony; and/or (3) discussing the facts or an argument in the charge calculated to arouse the sympathy of the jury. In response, the State argues that the instruction added by the Court was consistent with the definition of necessity and it was not the trial court's opinion of the testimony.

■ The choice of language by the trial judge, though trying to clarify the statute, is inappropriate if it draws particular attention to the evidence regarding the defendant's state of mind. Even a seemingly neutral instruction about a particular type of evidence constitutes an impermissible comment on the weight of the evidence because such an instruction singles out a particular piece of evidence for special attention. *See id.; Zani v. State*, 758 S.W.2d 233, 245 (Tex.Crim.App.1988). We find that the trial court impermissibly expressed an opinion on the weight of the evidence in violation of Article 36.14. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.2001).

### Harm Analysis

■ We must now determine whether sufficient harm resulted from the error to require reversal. The manner in which the jury charge error is reviewed on appeal is prescribed by Texas Code of Criminal Procedure Article 36.19 and *Almanza. Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1984); Tex.Code Crim.Proc.Ann. art. 36.19 (Vernon Supp.2000). The degree of harm that must be present to require reversal depends upon whether the error was preserved or unpreserved. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim.App.1986). If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be some harm to the accused from the error. *Ovalle v. State*, 13 S.W.3d 774 (Tex.Crim.App. 2000). In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless. *Id.*

■ In determining whether the error was harmful and reversal is required, an evidentiary review must be conducted, as well as review of any part of the record as a whole that may illuminate the actual, not just theoretical, harm to the accused. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim.App.1986); *Almanza*, 686 S.W.2d at 174. The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Ovalle*, 13 S.W.3d 774. If any harm is found after conducting this review, then reversal is required.

■ Because Russell preserved error by objecting to the additional instruction,

we analyze the case under the "some harm" test set forth in *Almanza. Almanza*, 686 S.W.2d. at 171. Under the "some harm" test, the presence of any harm is sufficient to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App. 1994). The Court of Criminal Appeals has eliminated any suggestion that the defendant has a burden of proof to establish harm from the improper instruction. *See Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim.App.2000). The Court stated the applicable procedure as follows:

> We do not resolve the issue by asking whether the appellant met a burden of proof to persuade us that he suffered some actual harm, as the dissent would have it. No party should have a burden to prove harm from an error, and there ordinarily is no way to prove "actual" harm. Burdens and requirements of proving actual facts are appropriate in the law of evidence, but they have little meaning for the harmless-error decision.
>
> In evaluating what effect, if any, an error had on the jury's verdict, the appellate court may look only to the record before it. The function of a party carrying the burden is simply to suggest, in light of that record, how prejudice may or may not have occurred. At that point, the court makes its own assessment as to what degree of likelihood exists as to that prejudicial or non-prejudicial impact and then applies to that assessment the likelihood-standard of the particular jurisdiction.

*Id.*

■ The nature of the error is an expansion or further elaboration of the statutory definition of necessity. Reviewing the arguments of counsel during the guilt/innocence phase, the State did make one reference to the erroneous instruction that Russell complains of on appeal. However,

Russell also referred to this instruction in his closing, placing more emphasis on the instruction than the State. Defense counsel approached the erroneous instruction strategically. He argued:

> ... we're going to walk toward this concept of necessity. And like I say when you get the jury charge, the definition is outlined for you and everything, I'm not going to read it to you and everything, but there is one paragraph, this last section says (reading) "This defense of justification of necessity is not available if the risk of imminent harm is reasonably appreciated by the actor has ceased to exist at the time of the alleged unlawful conduct." And the reason I'm putting that in there and everything is because I want you to look at that because for you to deal with the defense of necessity, this charge first of all literally places you in the person of being a reasonable person, a prudent man that probably should be a prudent person, but it says prudent man, but that would include you ladies too. Okay. You need to get in the mind set and think what would be reasonably prudent if you were that individual, Fred Russell, at 3:00 a.m. on the morning of December 14th, 1997 on 31 going east.

We must next examine the state of the evidence at trial, including the contested issues and weight of probative evidence. The critical issue at trial was whether Russell was acting out of necessity at the time he fled the scene of the accident because he did not deny that he was involved in the accident with the victim. He sought to justify his failure to stop and render aid with the defense of necessity based upon his fear of Cavendar. However, the evidence establishes that notwithstanding the violent nature of the wreck, and that Cavendar was lying motionless in the road when Russell left the scene, Russell made no effort to report the accident or seek help for Cavendar. The jury could have easily determined that even if Cavendar had exhibited a weapon and that Russell was justified in being fearful of staying at the scene and going to Cavendar's side to aid him, it did not excuse Russell from reporting the required information or getting help for Cavendar by reporting the accident from a remote location. Reviewing the charge as a whole, including the erroneous instruction, the jury was otherwise properly instructed on the necessity defense. Therefore, based upon a close inspection of the record, we cannot say that the error caused Russell some harm. Accordingly, we overrule Russell's first issue.

### Issue 2: Motion for Mistrial

██ In his second issue, Russell argues that the trial court erred in not granting his request for mistrial following prosecutorial misconduct in connection with an improper question by the prosecution. The alleged error occurred when the prosecutor asked Russell if he had a prior conviction for "failure to stop and render aid." Russell responded in the affirmative and his counsel objected. Then there was a hearing outside the presence of the jury.

During the hearing, Russell's counsel argued that it was a misnomer and that the prior conviction was for the failure to provide information, which is a misdemeanor and not the failure to stop and render aid. The State argued impeachment on the grounds that it was a crime of moral turpitude. After the hearing, defense counsel also requested that the court instruct the jury to disregard the question and answer and moved for a mistrial. The trial court sustained Russell's objection and the court gave the jury an instruction to disregard as follows:

Members of the jury, before I go further, before I recessed there was a question asked and maybe some preliminary talk about an alleged or purported conviction of the defendant with respect to an offense that was, a previous offense that was defined either stop, or failure to stop and render aid or failure to stop and give information. And the Court after some lengthy hearings and research has found that that question or that matters with respect, any matter with respect to that is, is improper. You are instructed not to consider any of those questions, responses, or any document which may have been offered with respect to such a matter for any purpose. Everybody understand? Okay. Let's proceed. You may come back to the witness stand.

The trial court then denied Russell's motion for mistrial.

■ When the trial court sustains an objection and grants a request for an instruction for the jury to disregard but denies a motion for mistrial, the issue becomes whether the trial court erred in denying the mistrial. *Carlock v. State,* 8 S.W.3d at 723. Ordinarily, a prompt instruction to disregard will cure the prejudicial effect associated with an improper question and answer, even one regarding extraneous offenses. *Ovalle v. State,* 13 S.W.3d 774 (Tex.Crim.App.2000). The mere asking of an improper question will not constitute reversible error unless the question results in obvious harm to the accused. *Brown v. State,* 692 S.W.2d 497, 501 (Tex.Crim.App.1985) (citing *Yarbrough v. State,* 617 S.W.2d 221, 228 (Tex.Crim. App.1981)).

■ An instruction to disregard will be presumed effective unless the facts of the case "suggest[s] the impossibility of withdrawing the impression produced on the minds of the jury[.]" *Waldo v. State,*

746 S.W.2d 750, 754 (Tex.Crim.App.1988) (citing *Hatcher v. State,* 43 Tex.Crim. 237, 65 S.W. 97, 98 (1901)); *Veteto v. State,* 8 S.W.3d 805 (Tex.App.—Waco 2000, pet. ref'd). The effectiveness of a curative instruction is determined on a case-by-case basis. *Id.; Fletcher v. State,* 852 S.W.2d 271, 275 (Tex.App.—Dallas 1993, pet. ref'd). Although not expressly adopted as exhaustive or definitive, the Court of Criminal Appeals has relied on several factors to determine whether an instruction to disregard cured the prejudicial effect. *Waldo,* 746 S.W.2d at 754. They are as follows:

1. The nature of the error;
2. The persistence of the prosecution in committing the error;
3. The flagrancy of the violation;
4. The particular instruction given;
5. The weight of the incriminating evidence; and
6. The harm to the accused as measured by the severity of the sentence.

*Id.* We likewise rely on these factors. *Veteto,* at 805; *Mendoza v. State,* 959 S.W.2d 321, 324 (Tex.App.—Waco 1997, pet. ref'd).

Applying these factors to the case at hand, any prejudice caused by the prosecution's question was cured by the trial court's instruction. The prejudicial effect of the question by the prosecution was not of such a nature that it could not be cured by an instruction to disregard. The particular instruction given adequately instructed the jury not to consider the prosecution's improper question and Russell's answer for any purpose. Nor can it be argued the prosecution was persistent in committing the error or that the violation was fragrant. The improper question was only asked once. Although there was evidence introduced for the defense of necessity, the totality of the evidence supports

Russell's conviction for the failure to stop and render aid. After reviewing the record in this case and applying the factors set out in *Veteto,* we conclude that the court's instruction effectively cured the prejudicial effect, if any. Russell's second issue is overruled.

### Conclusion

Having overruled Russell's two issues, we affirm the judgment of the trial court.

Justice VANCE dissenting.

VANCE, Justice, dissenting.

I agree with the majority that the trial court's instruction on the necessity defense constituted error. I disagree, however, with the analysis of the harm that flowed from this erroneous instruction. Because I believe that Russell suffered "some" harm as a result of the charge error, I would reverse his conviction.

### Harm from preserved charge error

When a complaint about an error in the charge is properly preserved, reversal is required if the error caused "some" harm to the accused. TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon Supp.2000); *Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App. 2000) (quoting *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984)). "In the context of *Almanza,* supra, and Article 36.19, supra, the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred." *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986). When we are evaluating whether charge error caused harm to the accused, we consider: (1) the entire jury charge; (2) the evidence produced at trial, the contested issues, and the weight of the probative evidence; (3)

the attorney's arguments; and (4) any other relevant information revealed by the record of the trial as a whole. *Ovalle,* 13 S.W.3d at 786 (quoting *Almanza,* 686 S.W.2d at 171). Furthermore:

We do not resolve the issue by asking whether the appellant met a burden of proof to persuade us that he suffered some actual harm.... No party should have a burden to prove harm from an error, and there ordinarily is no way to prove "actual" harm.... ["]In evaluating what effect, if any, an error had on the jury's verdict, the appellate court may look only to the record before it. The function of the party carrying the burden is simply to suggest, in light of that record, how prejudice may or may not have occurred. At that point, the court makes its own assessment as to what degree of likelihood exists as to that prejudicial or non-prejudicial impact, and then applies to that assessment the likelihood-standard of the particular jurisdiction."

*Ovalle,* 13 S.W.3d at 787 (quoting WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE 1165 (2d ed.1992)).

### First factor: the jury charge itself

The analysis starts with the jury charge itself. The portion of the charge instructing the jury on Russell's necessity defense provided:

You are instructed that conduct of a person is justified if that person reasonably believes the conduct is immediately necessary to avoid imminent harm, and the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

The term "conduct" means an act or omission and its accompanying mental state.

A "reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.

A reasonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the defendant.

This defense of justification or necessity is not available if the risk of eminent harm reasonably appreciated by the actor has ceased to exist at the time the alleged unlawful conduct occurred.

The court's addition to the statutory definition of the necessity defense turns the jury's attention away from the defendant's belief and to the existence or nonexistence of the risk of imminent harm. Rather than focusing on the "reasonable belief" of the defendant, as the statute requires, the supplement focuses on a risk that was "reasonably appreciated," a change in wording that the jury surely noticed. *See Ovalle*, 13 S.W.3d at 786. This instruction advises the jury that the actor's belief cannot be reasonable unless there is an actual risk of imminent harm at the time of the unlawful act or omission. Under the last portion of the charge, the defendant's actions would never be justified, no matter how reasonable the defendant's belief was, unless the evidence showed that there was an *actual* risk of imminent harm at the time of the unlawful conduct.

### Second factor: the contested issues and the evidence

The only contested issue at trial was whether Russell was justified in leaving the scene of the collision. To raise the defense of necessity, the defendant must admit to the unlawful conduct. *Allen v. State*, 971 S.W.2d 715, 720 (Tex.App.—

Houston [14th Dist.] 1998, no pet.); *Pentycuff v. State*, 680 S.W.2d 527, 528–29 (Tex. App.—Waco 1984, pet. ref'd). Russell did so here, but claimed that he was excused from stopping because he was afraid that Tim Cavender would harm him. Russell claimed his fear was based on Cavender's actions prior to the accident. According to Russell's testimony at trial, Cavender had bumped Russell's car, had been driving in such a way as to create the impression that he was trying to run Russell off the road or force him to a complete stop, had been waiving a pistol out of the window of his truck, and caused the collision between their vehicles by "crowding" Russell's vehicle. A police officer found a fully loaded 9 millimeter semi-automatic handgun in the vicinity of Cavender's pick-up, which was claimed by Cavender's family. At the time that Russell left the scene of the accident, Cavender was actually lying immobile in the middle of Highway 31. Russell did not contest whether Cavender was, in fact, injured and lying helpless in the road, but testified that he *believed* Cavender was sitting uninjured in his truck after the vehicles collided and he was afraid to stay to check on Cavender's condition.[1]

### Third factor: argument by counsel

The court's supplement to the necessity defense instruction was specifically addressed by both sides in their closing arguments. Russell's attorney argued:

[W]e're going to walk toward this concept of necessity. And like I say when you get the jury charge, the definition is outlined for you and everything, I'm not going to read it to you and everything, but there is one paragraph, this last section says (reading) "This defense of justification of necessity is not available

---

1. Russell's testimony was contrary to a statement he gave to the police at the time of his arrest, which recites that Russell saw "a sub-ject" lying in the roadway and saw another car run over "the man." At trial, Russell disavowed that portion of his statement.

if the risk of imminent harm reasonably appreciated by the actor has ceased to exist at the time of the alleged unlawful conduct." And the reason I'm putting that in there and everything is because I want you to look at that because for you to deal with the defense of necessity, this charge first of all literally places you in the person of being a reasonable person, a prudent man that probably should be a prudent person, but it says prudent man, but that would include you ladies too. Okay.

You need to get in the mind set and think what would be reasonably prudent if you were that individual, Fred Russell, at 3:00 a.m. on the morning of December 14th, 1997 on 31 going east. No lights, pitch dark, and some vehicle first of all hits you from behind, evidence supports that. Some individual pulls up beside and reaches something out of the window, a weapon. And Officer Paul's testimony that obviously this individual cuts you off.

. . .

And then Officer Paul tells you clearly that the decedent cut him off. So is his story consistent? . . . But place yourself in that position and go to this definition. What do you truly think was running through this man's mind at 3:00 a.m. in the morning? Somebody's bumping him in the rear, pulling up besides him and reaches something out, and then runs him off the street. What do you think? [Court's time notice omitted] Is there anyone in here who's superman? Because that would be the only somebody that's a reasonable prudent individual that would not realize, was he justified? Was he in fear of imminent harm? And where does it cease? Well, let me tender this to you. The statement given by my client basically says that he saw something that was in the road clumped over, didn't know what it was. That was

the first part of the statement and he's probably right. If you look at this photo, apparently Mr. Cavender was dressed in dark clothes. And there was no question that it was dark out there.

But you know, Mr. Roberson testified that he pulled up on the scene, that my client was pulling off because there comes an issue of whether or not my client saw the individual as he got hit by the car when he's coming along. Mr. Robinson's saying when he came up on the scene, the car came, was pulling off and he got out and he actually tried to flag down the vehicle that ended up running over the decedent.

I guess what I'm trying to put out to you and everything is that when did this harm cease to be a harm to Fred Russell? It probably ceased to be a harm when he probably got maybe 20 miles down the road or got to his home, got in his door.

Now, you may have a problem with how he reacted once he got home. . . . But we do know this, that if there's anyone in here of the belief that this defense of justification and this man's belief of imminent harm based on the facts that are supported by their witnesses to the fact that he ran him off the road, supported by their officer to the fact that a gun was found, supported by Mr. Ford to the fact that the car was rear-ended also. That in and of itself would leave you with the vision as to what would you do? . . . What would be your reaction if those events occurred to you? Would you jump up and run out of the car and say, how are you doing?

In reply, the State argued:

And then we get to the second issue about the whole defense of necessity and that is this last paragraph. It says (reading) "The defense of justification

and necessity is not available if the risk of imminent harm reasonably appreciated by the actor has ceased to exist at the time the alleged unlawful conduct occurred." Well, remember we know from the defendant's statement and from Officer Ivie's testimony that he saw the man being run over. That he saw him laying in the roadway. He knew he had been involved in a horrible accident. That car, Mr. Cavender's truck as Kelly Paul told you as the defendant came straight on would have taken up his whole view. All he would have seen come in front of him was a truck and he hit it going, I mean, almost broadside. He's got to know that he was involved in a bad accident. And that somebody could have been hurt. And, in fact, he saw that somebody and he saw him laying in the road. And he told you about it, and he got up here on the stand and lied to you and said he didn't and said Ray Ivie was lying.

So you know unless you believe, unless you believe that Officer Ivie got up there on that stand and lied to you and told you that the defendant said that, that he really didn't. Unless you believe Officer Ivie lied, then you have to believe that the risk of harm, if there was any risk of harm, which I suggest to you that there was not. If was there any risk of harm that it had ceased to exist and the defendant knew that it had ceased to exist at the time that he drove that old Oldsmobile on home to Powell, on home to Kerens or wherever it is that he said he lived, and left that situation there and left that man laying there bleeding and left that car in the middle of the road, that truck in the middle of the road for just any other citizen in the darkness of the night to come upon and hit.

As I view these arguments, both sides interpreted the court's instruction to mean that the defense was not available if the risk had actually ended at the time that the unlawful conduct occurred. The focus of the arguments, especially the State's, was on the actual existence of the threat, not on Russell's belief concerning the threat.

### Assessment of harm

Part of the jury's duty in the trial is to decide the credibility of the evidence and whether any defensive theory raised by the evidence has merit. *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim.App.1999). "The jury charge must allow the jury to determine the defendant's guilt in light of the evidence and the law." *Hutch v.. State*, 922 S.W.2d 166, 170 (Tex.Crim.App. 1996). In this case, the focus of Russell's defense was the reasonableness of his belief that he was in danger if he stayed at the scene to assist Cavender. The reasonableness of his belief should have been left as a fact question for the jury to decide. *See Granger*, 3 S.W.3d at 39; *Contreras v. State*, 998 S.W.2d 656, 664 (Tex.App.— Amarillo 1999, pet. granted).

In my view, the trial court instructed the jury that Russell's belief could not be reasonable if the facts were such that Cavender could not have inflicted the harm Russell feared. Thus, the instruction had the effect of instructing the jury to reject Russell's necessity defense in light of the fact that Cavender was lying helpless in the middle of the road rather than uninjured in his truck as Russell claimed he thought. Essentially, "[b]y failing to give [an] appropriate instruction, the trial court denied the jury the opportunity to decide this issue." *Granger*, 3 S.W.3d at 39; *see also Hutch*, 922 S.W.2d at 170. Because the only contested issue at trial was whether Russell was justified in leaving the scene, under this record and this instruction, the conviction was a foregone conclusion, and I would find that Russell suffered some

harm from the erroneous instruction. *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim.App.1992); *Darty v. State*, 994 S.W.2d 215, 220 (Tex.App.—San Antonio 1999, pet. ref'd).

Finding some harm to Russell from error in the jury charge, I would reverse his conviction and remand this cause for a new trial. Because the majority does not, I respectfully dissent.