Nathaniel C. Slaughter v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-164-CR

     NATHANIEL H. SLAUGHTER,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 1998-607-C
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Nathaniel H. Slaughter was convicted of exposing himself to his former girlfriend’s sixteen-year-old-daughter. At punishment, the jury was informed that he had been previously convicted
in a military court of acts of sodomy and indecency with two minor children. The jury sentenced
Slaughter to ten years in prison. In his appeal, Slaughter argues that his conviction should be
reversed because his motion for mistrial was denied. We affirm the trial court’s judgment.
Background
      Crystal Davis was sixteen at the time of the offense. Her mother had been involved with
Slaughter. Slaughter and Davis’s mother had a son together. One morning, while Davis was
getting ready for school, Slaughter walked into Davis’s apartment. Her mother and step-father
had already left for work. Slaughter told Davis that her mother had asked him to check in on her. 
After some small talk, Slaughter asked to use the bathroom. Davis went into her mother’s room
to dress for school. She then went to her bedroom closet to look for a different shirt to wear. 
Davis said Slaughter then came out of the bathroom with his erect penis exposed. Slaughter
rubbed his penis and asked Davis if she “want[ed] it.” Slaughter approached Davis, who jumped
onto the bed to try to escape. When she jumped off the bed, Slaughter picked her up and threw
her back onto the bed. He pinned her down. Davis struggled and protested. Slaughter eventually
let her go and left the apartment.
      Davis went to school that day and did not tell anyone of the incident with Slaughter. She
came home from school the next day to find Slaughter at her apartment talking to her mother. 
Davis then told her mother what had happened the morning before.
      Davis said she met with Slaughter once after this incident. Lakeisha Slaughter, Slaughter’s
daughter, took Davis to her apartment to meet with Slaughter. While there, Slaughter told Davis
he would give her money if she would drop the charges against him. Davis stated that she
refused.
      Davis’s mother testified that several times Slaughter also offered her money to drop the
charges. Slaughter also threatened her, which prompted her to hand-write a note dropping the
charges. Davis’s mother testified that she never intended to drop the charges but wrote the note
to appease Slaughter. She was afraid of him.
      Slaughter did not testify, but his statement taken by the police was entered into evidence by
the State. In it, Slaughter explained that after he used the bathroom, he caught his penis in his
zipper. He contended he did not intend to expose himself. He also explained that he rubbed his
penis because it hurt. 
      Lakeisha Slaughter testified that Davis was jealous of the attention Slaughter gave her. 
Lakeisha also testified that Davis admitted to her and Slaughter that she had lied about the incident
with Slaughter.
Motion for Mistrial
      In one issue, Slaughter contends that the trial court erred in overruling his motion for mistrial
when the State asked an improper question of a defense witness. During cross-examination of
Lakeisha, the State tried to establish the sleeping arrangements at Lakeisha’s apartment. The State
then asked,
      Q:  Who is your baby’s father?
      A:  Uh, it was Reginald Slaughter, I mean Reginald Adams.
      Q: Are you sure you don’t mean Nathaniel Slaughter?
Before Lakeisha answered, Slaughter’s attorney stated, “I object.” The trial court sustained the
objection and without any prompting, instructed the jury to “disregard the last statement for any
purpose whatsoever.” Slaughter’s motion for mistrial was overruled.
Applicable Law
      The mere asking of an improper question will not constitute reversible error unless the
question results in obvious prejudice to the accused. Brown v. State, 692 S.W.2d 497, 501 (Tex.
Crim. App. 1985) (citing Yarbrough v. State, 617 S.W.2d 221, 228 (Tex. Crim. App. 1981));
Russell v. State, 43 S.W.3d 66, 72 (Tex. App.—Waco 2000, no pet.). It is only in rare and
unusual instances that a conviction is reversed solely because an improper question was asked. 
Cavender v. State, 547 S.W.2d 601, 603 (Tex. Crim. App. 1977); Neugebauer v. State, 974
S.W.2d 374, 377 (Tex. App.—Amarillo 1998, pet. ref’d). 
      The prejudicial effect of asking an improper question is generally cured by an instruction to
disregard it. See Hernandez v. State, 805 S.W.2d 409, 413-14 (Tex. Crim. App. 1990). An
instruction to disregard will be presumed effective unless the facts of the case "suggests the
impossibility of withdrawing the impression produced on the minds of the jury[.]" Waldo v. State,
746 S.W.2d 750, 754 (Tex. Crim. App. 1988) (citing Hatcher v. State, 43 Tex. Crim. 237, 65
S.W. 97, 98 (1901); Veteto v. State, 8 S.W.3d 805 (Tex. App.—Waco 2000, pet. ref'd). The
effectiveness of a curative instruction is determined on a case-by-case basis. See Swallow v. State,
829 S.W.2d 223, 227 (Tex. Crim. App. 1992); Hardin v. State, 20 S.W.3d 84, 93 (Tex.
App.—Texarkana 2000, pet. ref’d).
      Although not expressly adopted as exhaustive or definitive, the Court of Criminal Appeals has
relied on several factors to determine whether an instruction to disregard cured the prejudicial
effect. Waldo, 746 S.W.2d at 754. They are as follows: 
1. The nature of the error;
2. The persistence of the prosecution in committing the error;
3. The flagrancy of the violation;
4. The particular instruction given;
5. The weight of the incriminating evidence; and
6. The harm to the accused as measured by the severity of the sentence.
Id. We likewise rely on these factors. Veteto, at 805; Mendoza v. State, 959 S.W.2d 321, 324
(Tex. App.—Waco 1997, pet. ref'd).
      Nature of the Error
      The State implied that Slaughter was the father of his daughter’s baby. Even though the
question was stated as a fact and designed to elicit evidence of an extraneous offense or bad act,
it was not such that an instruction to disregard could not cure its prejudice. See Hardin, 20
S.W.3d at 95.
      Persistence and Flagrancy
      When Lakeisha stumbled as to who her child’s father was, the State, unwisely, jumped to a
conclusion. However, the only additional emphasis by the State was to clarify who was the father
of the child. The prosecutors did not again emphasize the slip made by Lakeisha about the last
name of her child’s father.
      Particular Instruction
      The trial court was extremely prompt in giving its instruction to disregard the last statement. 
The instruction was adequate. See Waldo, 746 S.W.2d at 755-756.
      Weight of Incriminating Evidence
      Davis and her mother testified about the offense. Both also testified about Slaughter’s efforts
to offer them money to drop the charges. Lakeisha stated that Slaughter did not offer to pay
money to Davis. Rather, Lakeisha testified that Davis confessed to both her and Slaughter that
she had lied about the incident. Davis was recalled to contest that confession. Slaughter also
presented testimony that Davis’s mother had not told anyone else, even the police, that Slaughter
had offered money and threatened her to drop the charges. The State countered with the testimony
of the first assistant district attorney who fielded a call from Davis’s mother reporting the threats
and bribes. The State also introduced Slaughter’s initial statement to the police in which he
contended he did not intend to expose himself to Davis; rather, his penis was caught in his zipper,
and he rubbed it only because it hurt. The State introduced this statement to demonstrate that the
events as Slaughter recalled could not have happened as he stated.
      Although the credibility of Davis and her mother were questioned, the evidence of Slaughter’s
guilt was not so weak that the question posed by the State contributed to Slaughter’s conviction.
      Severity of Punishment
      The range of punishment for a felony indecency by exposure offense is two to ten years in
prison and a fine not to exceed $10,000. See Tex. Pen. Code Ann. §§ 12.34(a) &(b) and 21.11
(Vernon 1994 & Supp. 2001). The jury sentenced Slaughter to the maximum punishment for the
offense. This alone is not dispositive of prejudicial effect. See Waldo, 746 S.W.2d at 757. 
During punishment, the State introduced Slaughter’s military conviction for several counts of
sodomy and indecent acts. Slaughter had been released from prison on that conviction only one
year prior to the offense against Davis. Thus, the jury could have concluded from this evidence
that Slaughter deserved the maximum punishment.
Summary of Considerations
      In weighing the above factors, the State’s question regarding whether Lakeisha’s baby was
fathered by Slaughter did not create any obvious prejudice toward Slaughter. The prejudicial
effect was removed by an effective instruction to disregard. Thus, the trial court did not err in
denying Slaughter’s motion for mistrial. Slaughter’s sole issue is overruled.
Conclusion
      Having overruled Slaughter’s only issue on appeal, we affirm the judgment of the trial court.
 
                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed October 10, 2001
Do not publish
[CR25]