

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00356-CR

CHRISTIAN FUENTES APPELLANT

V.

THE STATE OF TEXAS STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1355699D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Christian Fuentes appeals from his conviction for sexual assault.

Because we find no reversible error in the trial court's judgment, we affirm it.

---

[1]*See* Tex. R. App. P. 47.4.

# I.  BACKGROUND

## A.  THE OFFENSE

Lily Thai,[2] a student at the University of Texas at Arlington, knew Jerry Guerrero from high school and worked with him at McDonald's.  Appellant also worked there with Lily and Jerry.  On December 29, 2013, between 12:00 and 1:00 a.m., Jerry called Lily and asked if she wanted to "hang out."  Lily said that she did, and Jerry, Appellant, and Jorge Gallegos—whom Lily had never met before—picked her up at her home at approximately 1:30 a.m.  While Jorge drove them to Appellant's home, Jerry and Lily drank beer and took Xanax.[3] Xanax, which is a prescribed drug for anxiety, can cause drowsiness, dizziness, confusion, and horizontal gaze nystagmus.  When they arrived at Appellant's house approximately thirty minutes later, Lily was already feeling the effects of the Xanax.  Appellant instructed the trio to enter the house by a back door and then to go into a bedroom that contained two beds, one of which was a twin bed.  Appellant then urged Lily to "take a line of something" that was on a dresser.  Lily thought what she snorted was either crushed Xanax or cocaine.  Lily then "blacked out."

---

[2]We refer to the complainant by the pseudonym originally used by the State in the indictment.  *See* 2d Tex. App. (Fort Worth) Loc. R. 7.

[3]Lily stated that she took two Xanax pills in Jorge's truck before they got to Appellant's house.

When Lily woke up, she was on the larger bed with no clothes on, Appellant was lying to her left wearing only a shirt, and Jorge was to her right with no clothes on. Jerry was alone on the twin bed. Both Appellant and Jorge tried to have sex with Lily, but she pushed them away. Appellant and Jorge began arguing with Jerry, "asking [Jerry], why did you post that, like you're stupid, take it down, why did you do that." Lily could not find her phone or her credit cards but eventually put on her clothes, and the four left Appellant's house together. Jorge dropped off Lily and Jerry at Jerry's house.

After Lily had been at Jerry's house for approximately one hour, and while they were talking, Jerry asked her "how does it feel to get f_____ by three [epithet]." Lily became upset, and at some point between 11:00 a.m. and 1:00 p.m., called her friend, Ricardo Perez, to come get her, using Jerry's phone to do so. Ricardo took Lily to his house and not her own home because she was still feeling the effects of the Xanax and "was kind of regaining conscience (sic)." Lily then got on Facebook, where a friend, Crystal Saenz, told her "something had happened" and asked if Lily was okay. Lily called another friend, Marymar Angel, and asked her for a ride from Jerry's house. When Marymar picked Lily up, Marymar told her about a video that had been posted to Jerry's Facebook page from Jerry's phone but that had since been deleted. Marymar and Lily were able to see screenshots from the video, showing Appellant performing oral sex on Lily.

3

Stephanie Figueroa, who knew Jerry, saw the video at approximately 7:30 a.m.[4] and described it as showing Lily lying on the bed, not moving, and appearing to be "knocked out" while one of the two men in the video touched her "private part." Lily's and Jerry's friend Eric Robles also saw the video and saw a man "performing inappropriate acts on the unconscious girl," who he said looked "dead." These "inappropriate acts" ranged from "kissing to touching, spreading her legs, fingering, even performing oral sex."

Based on the screenshots she saw of the video, the information she got from Marymar, and Jerry's comments at his house, Lily immediately reported the incident to the police, who sent her to the hospital for a rape examination. The report from the exam noted that the assault occurred between 3:00 and 4:00 a.m. A toxicology test revealed that Lily tested positive for Xanax, but the exam showed no physical trauma.

During the ensuing investigation, Jorge gave a statement to Detective Jack Jenkins on January 22, 2014, and indicated that at some point after Lily had taken more Xanax and had drunk alcohol at Appellant's house, she went to the bathroom, came out, and "was playing with her phone." He also admitted to taking and using Lily's credit cards and to taking and selling Lily's phone. Jenkins obtained Jorge's and Appellant's cell phone records during the time of the offense, but did not request Lily's. In Lily's statement to the police, she stated

---

[4]She believed the video had been posted at 5:30 a.m.

4

that although she "was passed out . . . unconscious," she "felt a mouth" and was "aware like a dream" that someone "had [his] mouth on [her] vagina." Lily told Jenkins that she believed it was Jerry or Appellant, but not Jorge.

## B.  THE TRIAL

A grand jury indicted Appellant with sexual assault. *See* Tex. Penal Code Ann. § 22.011(a)(1)(C) (West 2011). Jorge was charged with credit card abuse. Jerry was arrested for sexual assault but was charged with invasive visual recording and received deferred adjudication community supervision after pleading guilty to that offense.

After the jury was selected and sworn in Appellant's case, the trial court held a hearing outside the jury's presence to determine the admissibility of Lily's past sexual behavior, which Appellant had indicated he intended to introduce. *See* Tex. R. Evid. 412(c). Lily testified at the hearing that because she had had sex with Jerry in the past after taking Xanax on more than one occasion, she knew it was possible that Jerry, Jorge, and Appellant could have anticipated that it would happen again on December 28, 2013, when Jerry called asking if she wanted to "hang out." She stated that when she previously took Xanax before having sex with Jerry, the drug allowed her to be more comfortable.[5] The trial court ruled that Appellant could "elicit that fact that [Lily] thought the statement that, yeah, I thought this might happen, you can bring that out, but we're not

---

[5]Lily also testified, however, that taking Xanax did not allow her to "feel comfortable with Jerry having sex."

5

going into anything involving [prior] sex with Jerry, because sex with Jerry is not sex with [Appellant]." Appellant lodged a general objection to the trial court's ruling.

At trial, Stephanie testified that in the video, Lily looked to be "[p]robably like five percent" responsive, was not participating, and was not moving or speaking. Eric testified that Lily "was not in a state of mind to where she was . . . conscious to where she was just okay with the act" because other than "a two-second period where . . . she . . . rolled her head over," Lily was "just kind of just lying down, just there." According to Eric, Lily never opened her eyes in the one-minute video. He stated that Lily appeared to be "drunk or possibly under the influence of something else. She just didn't seem there. Literally seemed like she was passed out." Jerry's ex-girlfriend, Ivonne Moreno, testified that she also saw a portion of the video on Jerry's Facebook page and that Lily was "conscious" and "moving around like if she was kind of half passed out, half awake." The jury also heard the evidence we previously recounted that Lily did not consent and that she appeared to be unconscious in the video and screenshot photos. But Lily also admitted that she told Jenkins that she was angry about the video being posted on Facebook, not because she had been sexually assaulted. A toxicologist testified that unconsciousness is a possible side effect of swallowing or nasally snorting multiple doses of Xanax at one time. Additionally, Jenkins testified that he did not subpoena Lily's phone records

6

because he did not believe that Jorge's statement about Lily making a phone call was "a big issue."

After the jury deliberated Appellant's guilt or innocence for approximately two hours, the jury sent two notes to the trial court, asking (1) "does the Defense have the right to subpoena records, i.e., phone records, themselves" and (2) "does the Defense have the right to bring character witnesses."[6] The trial court proposed the following response to the first note: "In response to your note, both the State and the Defense have equal subpoena power. Please continue your deliberations." The trial court proposed to answer the second note as follows: "[T]he law does not permit me to answer that question." The State did not object to these responses. Appellant objected on the ground that the answers unfairly and unconstitutionally shifted the burden of proof to him. The trial court overruled the objection and denied Appellant's requests to supplement the responses with the applicable burden of proof or with an instruction that Appellant was not entitled to bring in character evidence regarding Lily, which

---

[6]Although the actual notes are not included as part of the appellate record, the trial court read the substance of the notes and its proposed responses into the reporter's record, and Appellant does not complain about their absence. *See Roper v. State*, No. 13-00-417-CR, 2003 WL 1561295, at *5 (Tex. App.—Corpus Christi Mar. 27, 2003, no pet.) (mem. op., not designated for publication) ("Although we do not have the note before us, the substance of the jury's questions and the trial court's response were clearly established at the hearing . . . . We find that the missing note is not a significant portion of the record."). *See generally* Tex. Code Crim. Proc. Ann. art. 36.27 (West 2006) ("All such proceedings in felony cases [regarding a jury's communication with the trial court] shall be a part of the record and recorded by the court reporter.").

7

had been excluded at the rule 412 hearing. The trial court then granted Appellant's request to subpoena Lily's phone records around the time of the offense.

Approximately two hours after the trial court answered the notes, the jury found Appellant guilty of sexual assault as charged in the indictment. After considering punishment evidence, the jury assessed Appellant's punishment at ten years' confinement, but recommended that the sentence be suspended and that he be placed on community supervision. The trial court sentenced Appellant in accordance with the jury's verdict—suspending the imposition of the ten-year sentence and placing him on community supervision for ten years—and imposed conditions of community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 4(a)–(b) (West Supp. 2016).

## C. MOTION FOR NEW TRIAL

Appellant filed a motion for new trial, arguing that Jenkins "had reason to believe that [Lily] made a phone call during the time she [claimed she] was unconscious" but failed to request her phone records. Appellant contended this evidence would have directly contradicted Lily's testimony that she was unconscious and unable to consent; thus, it was material evidence that warranted a new trial.

The trial court held a hearing on Appellant's motion on November 5, 2015. Appellant's investigator testified that Lily's subpoenaed phone records showed that on December 29, 2013, Lily's phone received a call from Jerry at 1:10 a.m.

8

that lasted three minutes, received a two-minute call from Jerry at 1:30 a.m., and retrieved voicemail at 2:30 a.m.[7] The investigator stated that voicemail retrieval ordinarily is something only the phone's owner would do. The records also revealed that Lily's phone accessed the internet at 2:31 a.m. The investigator testified that the statement Jorge gave to Jenkins was not included in the police reports produced to Appellant by the State, but the State proffered evidence showing that Jorge's statement was included in the documents the State produced to Appellant seventeen months before trial. The trial court denied Appellant's motion.

## II. SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Appellant argues that the evidence was insufficient to support his conviction because "it is clear this was [a] consensual sexual encounter." Appellant, therefore, challenges only the lack-of-consent element of the offense. *See* Tex. Penal Code Ann. § 22.011(b)(3), (5). A sexual assault is without the consent of the other person if "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist" or if "the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring." *Id.* In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any

---

[7]The account for the phone Lily was using was held in her mother's name.

9

rational trier of fact could have found this essential element of sexual assault beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

Lily testified that at no point did she consent to any sexual relations with Appellant and that her lack of consent would have been apparent. She stated that although she was "[a]ware like a dream" that someone had his mouth on her female sexual organ, she was unable to move and was effectively unconscious. Stephanie and Eric both testified that Lily appeared to be unconscious in the video Jerry posted. Although Ivonne testified that Lily appeared to be conscious in the video, the antipodal testimony that Lily was not conscious allowed a rational fact-finder to find that Appellant committed sexual assault on Lily without her consent, which we may not second-guess. *See, e.g.*, *Wilson v. State*, 473 S.W.3d 889, 897–99 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *Moore v. State*, No. 2-07-242-CR, 2008 WL 3917994, at *4 (Tex. App.—Fort Worth Aug. 26, 2008, no pet.) (mem. op., not designated for publication). *See generally* Tex. Penal Code Ann. § 22.011(b)(3), (5) (authorizing a finding that sexual assault was without complainant's consent if actor knew complainant was unconscious, physically unable to resist, or unaware sexual assault occurring). We overrule issue four.

## III. RULE 412

In his first issue, Appellant argues that the trial court abused its discretion by excluding evidence that Lily had sex with Jerry in the past while on Xanax,

which violated his rights under the Confrontation Clause. Appellant relies heavily on the fact that Jerry was arrested for sexual assault to show that this evidence of Lily's past sexual behavior with Jerry was more probative than prejudicial: "[S]ince Jerry was originally accused of sexual assault from the same episode and . . . instigated the contact with [Lily], and [because] Xanax was taken, much the same way he and [Lily] had sexual relations in the past, . . . it was an abuse of discretion for the court to refuse this line of testimony." We review the trial court's exclusion for an abuse of discretion. *See Robisheaux v. State*, 483 S.W.3d 205, 223 (Tex. App.—Austin 2016, pet. ref'd).

## A. PRESERVATION OF ERROR

Before we address the merits of Appellant's complaint, we should address the State's arguments that Appellant procedurally defaulted his complaints. *See Walker v. State*, 469 S.W.3d 204, 210 (Tex. App.—Tyler 2015, pet. ref'd) ("Error preservation is a threshold issue . . . ."). We agree with the State that Appellant, by only stating "I object" to the trial court's rule 412 ruling, failed to preserve any error regarding his Confrontation Clause argument. *See Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005) (holding specific Confrontation Clause objection to trial court's exclusion of evidence under rule 412 required to preserve that complaint for appeal); *Harper v. State*, No. 02-15-00374-CR, 2016 WL 4045203, at *5 (Tex. App.—Fort Worth July 28, 2016, no pet.) (mem. op., not designated for publication) ("Because Harper requested the trial court to rule on the admissibility of the testimony solely under rule 412, we hold that Harper's

11

argument at trial did not preserve for appeal his . . . Confrontation Clause argument."). *See generally* Tex. R. Evid. 412(b)(2)(E) (providing evidence that is constitutionally required to be admitted is material and admissible if more probative than prejudicial). However, a fair reading of Appellant's brief shows that he additionally attacks the trial court's alleged abuse of its discretion by finding the evidence of Lily's past sexual behavior with Jerry inadmissible under rule 412. *See* Tex. R. App. P. 38.1(f), 38.9. Appellant's general objection to the trial court's exclusion preserved his evidentiary complaint for our review because the tenor of his objection under rule 412 was apparent from the context of the separate rule 412 hearing. *See* Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 412(c); *Ford v. State*, 305 S.W.3d 530, 533–34 (Tex. Crim. App. 2009). And the trial court clearly understood that Appellant was seeking to admit evidence of Lily's past behavior with Jerry under an exception to rule 412, not just the evidence that Lily knew sex was a possibility when Jerry called her to "hang out":

> You may elicit that fact that she thought the statement that, yeah, I thought this might happen, you can bring that out, but we're not going into anything involving sex with Jerry, because sex with Jerry is not sex with [Appellant].
>
> [Appellant's counsel objects to the ruling.]
>
> . . . So that's my ruling pursuant to 412.
>
> All right. I think we are clear as far as extraneous offenses. We'll go into the . . . drugs and everything that was going on at the time of the alleged offense.

12

*See* Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 103(a)(1)(B); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). This is sufficient to preserve Appellant's appellate complaint that the trial court abused its discretion by excluding evidence of Lily's past similar behavior with Jerry.

The State also argues that Appellant failed to include a bill of exceptions or offer of proof regarding the excluded evidence, which also procedurally defaulted his claim. *See* Tex. R. Evid. 103(a)(2). But the "sealed record of the [rule 412] in camera hearing preserves any excluded testimony for appellate purposes." *Wofford v. State*, 903 S.W.2d 796, 798 (Tex. App.—Dallas 1995, pet. ref'd). We conclude that Appellant preserved for our review his complaint that the trial court abused its discretion by excluding evidence of Lily's past sexual behavior with Jerry under rule 412.

## B. EXCEPTION TO INADMISSIBILITY OF PAST SEXUAL BEHAVIOR

Under rule 412, evidence of a victim's previous sexual conduct is inadmissible unless the conduct falls within a specified category of material evidence and is more probative than prejudicial. Tex. R. Evid. 412(a)–(b). At trial and now on appeal, Appellant asserts that because Jerry was originally arrested for sexual assault and was eventually charged with a crime based on the facts of the sexual assault Appellant was charged with, the excluded evidence fell within a specified category in that it concerned "past sexual behavior with the defendant and [was] offered to prove consent." Tex. R. Evid. 412(b)(1)(B). However, the evidence of Lily's past sexual behavior with Jerry

13

does not encompass any acts with Appellant, rendering this evidence immaterial and, thus, inadmissible under rule 412(b). *See Arriola v. State*, 969 S.W.2d 42, 43 (Tex. App.—Beaumont 1998, pet. ref'd); *Boyle v. State*, 820 S.W.2d 122, 149 (Tex. Crim. App. 1991) (op. on reh'g), *cert. denied*, 503 U.S. 921 (1992); *cf. United States v. Saunders*, 943 F.2d 388, 392 (4th Cir. 1991) (holding evidence of sexual-assault victim's prior sexual behavior with defendant's friend not admissible under federal evidence rule 412), *cert. denied*, 502 U.S. 1105 (1992);[8] *Pedro v. State*, No. 03-06-00066-CR, 2007 WL 619492, at *5–6 (Tex. App.—Austin Feb. 27, 2007, no pet.) (mem. op., not designated for publication) ("Evidence indicating that Y.C. had intercourse with someone other than appellant does not, by itself, tend to prove or disprove that she would fabricate sexual assault charges against the appellant."). We reject Appellant's implication that because Jerry was "a" defendant in charges arising from Appellant's sexual assault of Lily, any past, similar sexual behavior with Jerry equates to past behavior with "the" defendant, i.e., Appellant. *See generally Bruton*, 428 S.W.3d at 873 (recognizing interpretation of rule of evidence may look to plain language, federal opinions interpreting similar federal evidentiary rule, and extratextual factors even if rule unambiguous). We do not read rule 412 so broadly as to include, within its exceptions to inadmissibility, evidence of the complainant's

---

[8]Because federal evidentiary rule 412 is similar to Texas rule 412, we may look to federal cases interpreting the federal rule for guidance in applying the Texas rule. *See Bruton v. State*, 428 S.W.3d 865, 873 (Tex. Crim. App. 2014).

14

past sexual behavior with someone who was present but not charged with a sexual offense—not "the defendant" specified by rule 412's exceptions to inadmissibility. *See United States v. Pablo*, 696 F.3d 1280, 1299–1300 (10th Cir. 2012) (holding trial court did not err by excluding evidence that rape victim made sexual advances toward co-defendant earlier the same night as the offense because it had little probative value regarding the victim's consent); *see also* Fed. R. Evid. 412(b)(1)(B) advisory committee's note to 1994 amendment ("Under the exception in subdivision (b)(1)(B), evidence of specific instances of sexual behavior *with respect to the person whose sexual misconduct is alleged* is admissible . . . . Evidence relating to the victim's alleged sexual predisposition is not admissible pursuant to this exception." (emphasis added)). The evidence proffered by Appellant was nothing more than evidence of Lily's sexual predisposition, which does not fall within an exception to rule 412's inadmissibility.

Additionally, Lily never disputed that she voluntarily took the Xanax, that she was familiar with its effects on her, or that she knew different methods to ingest it so the drug would "hit[]" her faster. As such, the evidence that she took Xanax in the past with Jerry to relax in order to have sex did not tend to prove a fact that was at issue in the prosecution. *See* Tex. R. Evid. 401; *see also Todd v. State*, 242 S.W.3d 126, 129 (Tex. App.—Texarkana 2007, pet. ref'd) (holding evidence of alternative explanation for medical evidence suggesting sexual assault "*must clearly contradict* . . . the State's evidence"); *Cooper v. State*,

15

959 S.W.2d 682, 684–85 (Tex. App.—Austin 1997, pet. ref'd) (holding evidence of complainant's past sexual history with her boyfriend occurring "around the same time that the alleged offense took place" inadmissible to show complainant fabricated sexual assault to hide relationship from her mother because evidence showed complainant previously disclosed relationship).

Even if the disputed evidence were material under rule 412(b)(2), Appellant has failed to carry his burden to prove (or even address) that the probative value of the excluded evidence outweighed any unfair prejudice to Lily that would have been caused by its admission. *See* Tex. R. Evid. 412(b)(3); *Stephens v. State*, 978 S.W.2d 728, 732–35 (Tex. App.—Austin 1998, pet. ref'd). We conclude that the trial court did not abuse its discretion by excluding specific, nonmaterial evidence of Lily's past sexual behavior with Jerry; thus, we overrule issue one.

## IV.  ANSWERS TO WRITTEN JURY COMMUNICATIONS

In his second issue, Appellant argues that the trial court's responses to the jury's written communications implied that Appellant had the burden to produce evidence to show his innocence and, thus, unconstitutionally shifted the burden of proof. *See* Tex. Code Crim. Proc. Ann. art. 38.03 (West 1979).  A jury's communications with the court are governed by article 36.27, and we review a trial court's responses for an abuse of discretion.  *See* Tex. Code Crim. Proc. Ann. art. 36.27; *see also United States v. Boyd*, 773 F.3d 637, 646 (5th Cir.

16

2014), *cert. denied*, 135 S. Ct. 2328 (2015); *Brown v. State*, 870 S.W.2d 53, 54–55 (Tex. Crim. App. 1994).

A trial court's answer to a jury communication is considered an additional or supplemental jury instruction and is proper only if it would have been properly given in the original charge. *See* Tex. Code Crim. Proc. Ann. art. 36.16 (West 2006); *Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011); *Barrera v. State*, 10 S.W.3d 743, 747 (Tex. App.—Corpus Christi 2000, no pet.). In giving a jury charge, a trial court is limited to setting forth the law applicable to the case and may not comment on the weight of the evidence.[9] *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); *Lucio*, 353 S.W.3d at 875. Any complaint regarding a supplemental jury instruction provided in a response to a jury note is analyzed under the test employed for any other alleged jury-charge error: we first determine whether error exists and, if so, evaluate the error for harm. *See Cardona v. State*, No. 13-14-00543-CR, 2016 WL 1072622, at *5 (Tex. App.—Corpus Christi July 27, 2016, pet. ref'd) (mem. op., not designated for publication).

The trial court's response to the second jury note was not error and certainly not reversible error. Because the trial court informed the jury that it

---

[9]As noted by the State, Appellant does not argue that the trial court's responses impermissibly commented on the weight of the evidence. *See Russell v. State*, 43 S.W.3d 66, 69 (Tex. App.—Waco 2001, no pet.); *cf. In re VLK*, 24 S.W.3d 338, 343 (Tex. 2000) (holding a trial court's jury instruction, even if a correct statement of the law, may still be error if it constituted a comment on the weight of the evidence).

could not answer its question regarding Appellant's right to bring "character witnesses," this response was not a supplemental or additional jury instruction. *See Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993); *Merryman v. State*, 391 S.W.3d 261, 274 (Tex. App.—San Antonio 2012, pet. ref'd). Additionally, the trial court correctly informed the jury in the original charge that "[t]he law does not require a defendant to prove his innocence or produce any evidence at all." Thus, the trial court did not abuse its discretion by informing the jury that it could not respond to the second inquiry. *Cf. Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (holding court looks to jury instructions as a whole and not in isolation in assaying the harm arising from any jury-charge error); *Hudson v. State*, 128 S.W.3d 367, 382 (Tex. App.—Texarkana 2004, no pet.) (recognizing if trial court's response to a jury note does not qualify as an additional or supplemental instruction, no reversible error results).

But the trial court's response to the first inquiry was a supplemental jury instruction; thus, we first determine whether that instruction was in error. A trial court does not err by instructing the jury using a correct statement of law that does not comment on the weight of the evidence. *See Whitney v. State*, 396 S.W.3d 696, 703 (Tex. App.—Fort Worth 2013, pet. ref'd). Here, the trial court correctly stated that both the State and Appellant had "equal subpoena power." *See* Tex. Code Crim. Proc. Ann. art. 24.03(a) (West 2009). This instruction did not shift the burden of proof to Appellant. *Cf. Baines v. State*, 401 S.W.3d 104, 108–09 (Tex. App.—Houston [14th Dist.] 2011, no pet.)

18

(holding State's jury argument that appellant had "the same subpoena power" did not shift the burden of proof but was a "permissible remark about appellant's failure to produce evidence in his favor"). Thus, the trial court did not abuse its discretion in responding to the jury's first inquiry.[10] *See generally Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (recognizing correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried"). We overrule issue two.

## V. NEW TRIAL DENIAL

In his third issue, Appellant argues that the trial court abused its discretion by denying his motion for new trial because the evidence that Lily's phone was used during the time she was unconscious was material, new evidence tending to show his innocence. *See* Tex. Code Crim. Proc. Ann. art. 40.001 (West 2006). A trial court is required to grant a defendant a new trial if "material evidence favorable to the accused has been discovered since trial." *Id.* But a trial court must find four factors to trigger the relief provided by article 40.001:

(1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;

---

[10]Even if the response were error, we would conclude that the response did not result in the requisite harm to Appellant. *See* Tex. R. App. P. 44.2(a); *see also Snowden v. State*, 353 S.W.3d 815, 822 n.31 (Tex. Crim. App. 2011) (noting erroneous burden-shifting jury instruction analyzed as constitutional error).

19

(2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;

(3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and

(4) the new evidence is probably true and will bring about a different result in a new trial.

*Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014). We review the trial court's denial for an abuse of discretion, reversing only if the trial court's ruling was clearly erroneous and arbitrary. *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). In our review, we view the evidence in the light most favorable to the trial court's ruling, do not substitute our own judgment for that of the trial court, and uphold the ruling if it is within the zone of reasonable disagreement. *Id.*; *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002).

Appellant raises *Brady* and argues (1) that Lily's phone records were unavailable to him because they were produced post-trial and (2) that they would cause a different result in a new trial because they showed Lily used her phone during the time she claimed she was unconscious.[11] *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963); *see also* Tex. Code Crim. Proc. Ann. art. 39.14(h) (West Supp. 2016). But the State showed at the new-trial hearing that it had produced Jorge's statement—in which he stated Lily was using her phone while at Appellant's house—seventeen months before trial,

---

[11]Appellant raised his *Brady* arguments at the hearing on his motion for new trial, preserving this contention for our review. *See Keeter v. State*, 175 S.W.3d 756, 759–61 (Tex. Crim. App.), *cert. denied*, 546 U.S. 852 (2005).

vitiating his argument that these records were effectively unavailable or that a *Brady* violation occurred. *See Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006); *Jones v. State*, 234 S.W.3d 151, 157–58 (Tex. App.—San Antonio 2007, no pet.). The trial court did not abuse its discretion by implicitly finding that not all parts of the test required by article 40.001 had been met. We overrule issue three.

## VI. CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: MEIER, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 27, 2016

21