CHARLEY HATCHER v. THE STATE.

No. 2429. Decided June 22, 1901.

**1.—Continuance—Bill of Exceptions—Practice on Appeal.**

The overruling of an application for continuance will not be considered on appeal where no bill of exceptions to the ruling was taken in the trial court.

**2.—Admission of Illegal Testimony—Withdrawal by Court.**

When the testimony of a fellow prisoner, to show that defendant attempted to fabricate testimony of an alibi by said witness, had been admitted, but was subsequently withdrawn from the consideration of the jury orally and by the charge of the court, Held, that the testimony, not being a confession by defendant, nor of so damaging a character as likely to influence the jury, the error of its admission was cured by its withdrawal.

**3.—Same.**

On a trial for murder, the admission in evidence of a threat by a conspirator against deceased was not error where it was shown that the defendant afterwards entered into the conspiracy. And, if error was committed, the subsequent exclusion of the testimony by the court, and charge to the jury not to consider it, cured the error.

**4.—Murder—Malice Aforethought—Charge.**

On a trial for murder, it is not necessary for the court in its charge to define "malice aforethought," where the charge adequately defines malice and express and implied malice.

**5.—Murder—Accomplice Testimony—Charge.**

On a trial for murder, where the testimony clearly shows that a witness is an accomplice, it is competent for the court to so instruct the jury; and such a charge is not tantamount to the effect that defendant is guilty.

**6.—Murder—Charge—Manslaughter.**

On a trial for murder, where the testimony shows that defendant and his confederates beat deceased into insensibility, robbed him, continued their beating until he was dead, and to make sure of their victim, set fire to him, a charge on manslaughter was evidently not called for.

Appeal from the District Court of Fannin. Tried below before Hon. Ben H. Denton.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment charged appellant with the murder of John Johnson, on the 23d day of December, 1900, by striking and beating him with his hands and fists; and by strangling and chocking him; and stamping him with his feet; and by striking him with a rock and knife, and stick and club; and by burning him to death by pouring inflammable oil upon his clothing and setting fire to his clothing.

It is substantially shown by the evidence in the case that deceased, John Johnson had sold a bale of cotton for upwards of $40, in the village of Gobel, the day before he was killed. That he commenced drinking and had become very drunk. During the evening, after dark, he was displaying his money in a saloon, and in the presence of defendant Hatcher, and the other parties, to wit, Jim Moore and Paul Dorsey, who were implicated in the murder. He played cards with these parties and others in the saloon until about 12 or 1 o'clock p. m. Before the

saloon was closed, Jim Moore and Paul Dorsey agreed to rob deceased on his way home. Moore was to start home with him, and Dorsey and Hatcher were to intercept them on the way and rob him. This plan was frustrated by the fact that one Bill Jones was with deceased and Jim Moore at the time they met them. Jones, it appears, was a friend of deceased's and had been trying several times during the night, without avail, to get deceased to go home with him, and had also tried in vain to prevent deceased from playing cards with the other parties. When Hatcher and Dorsey found Jones with deceased and Moore, Moore proposed that they would take deceased to the outhouse where he was afterwards killed. Reaching the outhouse, the parties made a fire, and in a short time Bill Jones left. Jim Moore took two knives from deceased and tried to get his money out of his pocket. Deceased resisted and Moore grabbed him by the throat, shoved him down, put his knees on his stomach, and took his money. The parties, Moore, Hatcher, and Dorsey, went into the back yard and divided the money. They then went back into the house, where Moore again jerked deceased down upon the floor and beat and chocked him to death. Moore then poured some bitters on deceased's head and body and set him on fire. The parties then left. The facts above stated were testified to by Paul Dorsey, who turned State's evidence. The physical facts testified to by the witnesses who found the body in the outhouse corroborated the testimony of the accomplice Dorsey; and the physicians who held the autopsy testified that in their opinion deceased was dead when he was set on fire. Defendant Hatcher fled to Mississippi, and was there arrested and extradited.

The statement of facts in the record is quite voluminous, but the above is a concise resume of the substantial features.

Upon the subject of accomplice testimony, the court charged the jury, as follows:

"I further charge you that the witness Paul Dorsey is an accomplice, and you can not find the defendant guilty upon his testimony unless you are satisfied that the same has been corroborated by other evidence tending to establish that the defendant did in fact commit the offense. One accomplice can not corroborate another accomplice, and you are instructed that if you find Bill Jones to be an accomplice (and the said Paul Dorsey, I charge you, is an accomplice), as accomplice is herein defined in this case, you can not look to the evidence of either of them to corroborate the other, or the limitations relating to accomplices relating to one with another, except that you will look to all the facts and circumstances in evidence before you, you may determine whether said Paul Dorsey and Bill Jones, or either of them, has been corroborated, if you should find Bill Jones was an accomplice."

*J. L. Carpenter* and *Thos. P. Steger,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life; hence this appeal.

Appellant assigns as error the action of the court overruling his motion for continuance. There being no bill of exceptions presenting this error, the same can not be considered. He also complains of the action of the court admitting the evidence of Ude Cude. It appears from the bill of exceptions that appellant and Ude Cude were confined in jail in the same cell, defendant being incarcerated on this charge and Cude for another offense; and the State was permitted to prove by Cude that while they were so in jail together, appellant proposed to him to swear to facts on his behalf constituting an alibi, and he would do as much for witness when his case came up for trial. The bill further shows that the only warning given appellant was when he was arrested in Mississippi by the officers who went after defendant, which was on the 11th of January, 1901. The bill does not show when the statement was made by appellant to Cude in the jail in Texas. The objection made by appellant to the introduction of this testimony was because it was too remote in point of time after the warning given; and we are referred to the case of Barth v. State, 39 Texas Criminal Reports, 381, as authority for its exclusion. In Barth's case, whether the statement was made within one, two or three weeks after the warning given, the witness was not able to state. However, the court appears to have conceded after the admission of this testimony that it should be excluded, and accordingly orally instructed the jury that they should not consider the testimony,— that it was excluded from their consideration,—and subsequently, in the written charge, also instructed the jury to the same effect. Appellant contends that the admission of this testimony was of a prejudicial character, and that, having been admitted, it was beyond the power of the court to eradicate it or prevent its influencing the jury; and on this subject he also refers us to Barth v. State, supra, and Welhousen v. State, 30 Texas Criminal Appeals, 623. Both of said cases are authority for appellant's contention, but it will be observed the testimony admitted and subsequently excluded was of a very damaging character. In this case there was no confession of guilt,—only an attempt to fabricate testimony of an alibi. Under the circumstances of this case, we think the principle announced in Miller v. State, 31 Texas Criminal Reports, 636, is more in point. As is stated in that case, there is a contrariety of decisions of this court on the subject of the exclusion of testimony after it has once been improperly admitted. Some of the cases hold that the exclusion of such testimony will not cure the error, while others hold the contrary. In such a conflict, the true rule would seem to be that if the admitted testimony is of such a damaging character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury, and thus curing the error, it will be cause for reversal; otherwise, if the testimony is not of that damaging character, and not likely to influence the jury, it can be withdrawn, and the error of its ad-

mission thereby cured. We deem the testimony in this case of the latter
character.

On the trial of the case the State was permitted to prove by one Wisdom
that on the Saturday night before the killing, while the parties were at
Fitzwater's saloon, and while he (witness) and deceased, Johnson, and
Jim Moore were engaged in a game of cards, somebody said to Moore,
"I would not play with the old man [meaning Johnson]; he is too
drunk,"—and that Moore replied, "I am going to have his money, if I
have to knock him in the head." It was not shown in this connection,
as stated by the bill, that appellant was immediately present when this
remark was made, or that he heard it; and it is further suggested by the
bill that this was prior to the formation of any conspiracy on the part of
Moore, Dorsey, and Hatcher to kill deceased, if any such conspiracy was
in fact formed. The court admitted this testimony, and subsequently
excluded it, and instructed the jury not to consider the same. This action
of the court is assigned as error. In the first place, we are inclined to
believe the testimony was admissible, although it be conceded that no con-
spiracy was formed to rob deceased until afterwards, as this was a remark
of one of the conspirators, evidently in line with and in pursuance of the
conspiracy; and, if subsequently appellant came into the conspiracy, he
adopted all that had been said and done before. Harris v. State, 31
Texas Crim. Rep., 415; Stevens v. State, 42 Texas Crim. Rep., 154. In
addition to this, the testimony was excluded by the court, and the jury
charged not to consider it.

The court's charge is attacked in a number of assignments, but we will
consider only such as we deem important. Appellant complains that the
court did not define "malice aforethought." Now, it has been held that
it was necessary to aver malice aforethought in an indictment. Cravey
v. State, 36 Texas Crim Rep., 90. But in that case it was held that it
was not necessary to define the term "malice aforethought," where malice
and express and implied malice were adequately defined. And see Hamp·
v. State, 1 Texas Ct. Rep., 366.

It is also contended that the court committed an error in telling the
jury that the witness Paul Dorsey was an accomplice; that this was tanta-
mount to a suggestion that he was an accomplice with defendant in the
commission of the offense, and so it was equivalent to telling the jury
that appellant was guilty. To support this contention, appellant refers
us to Spears v. State, 24 Texas Criminal Appeals, 537. An examina-
tion of said case shows that the court instructed the jury that the witness
was an accomplice with defendant Spears in the commission of the
offense. Here the court gave no such instruction, but merely informed
the jury that the witness Dorsey was to be regarded as an accomplice.
If Dorsey was criminally connected with the commission of the offense,
regardless of appellant's participation therein, he would be an accomplice,
and his testimony would have to be corroborated. It has frequently been
held that, where the testimony clearly shows the witness is an accomplice,
it is competent to so instruct the jury, and this has never been con-

sidered a charge to the effect that appellant was guilty. Sessions v. State, 37 Texas Crim. Rep., 58. And for other authorities see White's Ann. Code Crim. Proc., sec. 1000.

It is further urged that the court's charge on the necessity of corroboration of an accomplice, and that one accomplice could not corroborate another accomplice, was given in such shape as to confuse and mislead the jury, and that the requested charges on that subject should have been given. We have examined the charge carefully in the respect in which it is criticised, and in our opinion it was sufficient.

Appellant also insists that the testimony shows the object of the parties was only to rob, and not to murder, and, it not being shown 'that they used an instrument likely to produce death or evidently intended to kill, that a charge on manslaughter should have been given. The circumstances of this killing, as detailed by the accomplice, and who was corroborated by other testimony, shows that it was a most cruel murder. They not only beat deceased into insensibility, and then robbed him, but continued beating him until he was dead, and then, as if to make sure of their victim, set fire to him. Under such circumstances, a charge on manslaughter was evidently not called for. While the court gave a charge on murder in the second degree out of abundant caution, this was scarcely called for.

We do not deem it necessary to discuss the other assignments of error. We have carefully examined the record, and in our opinion appellant had a fair trial, and the evidence amply supports the verdict. The judgment is affirmed.

*Affirmed.*

[Note.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]