NUMBER 13-01-798-CR


COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




DAVID R. THOMPSON,                                                     Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.




On appeal from the 319th District Court
of Nueces County, Texas.




MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Castillo

Memorandum Opinion by Justice Castillo

         A jury convicted appellant David R. Thompson of driving while intoxicated. The
trial court assessed punishment at ten years confinement in the Institutional Division
of the Texas Department of Criminal Justice, probated for ten years. This appeal
ensued. In two issues, Thompson complains that the prosecution: (1) twice elicited
testimony from a peace officer that Thompson had refused to answer questions after
his arrest; and (2) knowingly presented perjured testimony to the jury. The trial court
has certified that this is not a plea bargain case, and Thompson has the right of appeal. 
See Tex. R. App. P. 25.2(a)(2). We affirm. 
I. FACTUAL SUMMARY
         This is a memorandum opinion not designated for publication. The parties are
familiar with the facts. We will not recite them here except as necessary to advise the
parties of our decision and the basic reasons for it. See Tex. R. App. P. 47.4.
         Nueces County Deputy Constable Donald Hatch was patrolling in the vicinity of
Gypsy Road in Corpus Christi, Texas during the early morning hours. He noticed a
white GMC Yukon sports utility vehicle. The vehicle appeared to be speeding. The
deputy initiated a traffic stop. He investigated further. He arrested Thompson for
driving while intoxicated. 
         Thompson testified during the culpability phase of the trial. He denied being
intoxicated on the date of his arrest.


 He admitted to drinking two beers over the
course of several hours. He acknowledged he had served prison time for a prior
driving-while-intoxicated offense. He testified he was on parole for that offense. He
conceded he had an alcohol problem. 
II. POST-ARREST SILENCE
         In his first issue, Thompson asserts he was denied due process of law when the
prosecution twice elicited testimony from Deputy Hatch that Thompson had refused
to answer questions after his arrest. The State responds that Thompson failed to
preserve error and opened the door to the questions. In any event, the State argues,
the trial court cured any error by instructing the jury to disregard the evidence. 
A. Preservation of Error
         To preserve a complaint for appellate review, a party must present a timely
request, objection, or motion to the trial court stating the specific grounds for
the desired ruling if the specific grounds were not apparent from the context. 
Tex. R. App. P. 33.1(a); Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim.
App. 2000).  Generally, a party's failure to timely and specifically object at trial
waives error. See Blue, 41 S.W.3d at 131. Specifically, a timely objection is
required to preserve error in the admission of evidence. Tex. R. App. P. 33.1(a);
Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). In this situation, the
proper method to preserve error is to: (1) object timely; (2) request the trial court to
instruct the jury to disregard any objectionable evidence; and (3) move for a mistrial
based on admission of the evidence. Coe v. State, 683 S.W.2d 431, 436 (Tex. Crim.
App. 1984).  
         Further, one should object at the earliest opportunity, or as soon as the ground
for objecting becomes apparent. Johnson v. State, 803 S.W.2d 272, 291 (Tex. Crim.
App. 1990), overruled on other grounds, Heitman v. State, 815 S.W.2d 681, 685
(Tex. Crim. App. 1991); Guzman v. State, 521 S.W.2d 267, 269 (Tex. Crim.
App. 1975). "The most important procedure is to press the specific objection to the
point of obtaining an adverse ruling, be that to the objection, the request for an
instruction, or the motion for mistrial." Fuller v. State, 827 S.W.2d 919, 926 (Tex.
Crim. App. 1992); Lusk v. State, 82 S.W.3d 57, 60 (Tex. App.–Amarillo 2002, pet.
ref'd). 
         An accused may waive even constitutional rights. See Saldano v. State,
70 S.W.3d 873, 891 (Tex. Crim. App. 2002) (finding waiver of 14th amendment
right); see also Jenkins v. State, 912 S.W.2d 793, 815 (Tex. Crim. App. 1995) (op.
on reh'g) (finding waiver of 6th and 14th amendment rights). Nonetheless, rule 103(d)
of the rules of evidence authorizes us in a criminal case to "take notice
of fundamental errors affecting substantial rights although they were not brought
to the attention of the court." Tex. R. Evid. 103(d). "Some rights are widely
considered so fundamental to the proper functioning of our adjudicatory process
as to enjoy special protection in the system." Blue, 41 S.W.3d at 131 (quoting
Marin v. State, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993), overruled on
other grounds, Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)). 
"A principal characteristic of these rights is that they cannot be forfeited. That is to
say, they are not extinguished by inaction alone." Blue, 41 S.W.3d at 131. Instead,
an accused must expressly relinquish a fundamental right. Id. 
         The right to remain silent is not so fundamental as to require the special
protection of relieving the appellant of the necessity of an objection. Wheatfall
v. State, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994); Smith v. State,
721 S.W.2d 844, 855 (Tex. Crim. App. 1986). Objection is required to preserve
the issue. Wheatfall, 882 S.W.2d at 836; Smith, 721 S.W.2d at 855. B. The Record
Thompson's first complaint is premised on the State's direct examination of 
Deputy Hatch:
[Prosecutor]: Now, when you arrived at the police station, was
that in Port Aransas?

                  [Hatch]: Yes, it was, the Port Aransas law enforcement center.
 
[Prosecutor]: Did the Defendant want to cooperate with you as far
as answering any questions? 
 
[Hatch]: No, the Defendant refused to answer any questions that
I asked him. 
 
[Prosecutor]: In other words, the Defendant did not want to
cooperate with anything? 
         At that point, defense counsel requested a bench conference: 
[Defense Counsel]: Judge, my defendant has a constitutional right
to remain silent. She just – she just commented and asked the officer
questions regarding his exercise of his constitutional rights to remain
silent.
 
[Prosecutor]: Not in a DWI case. In DWI cases, they're allowed
to ask certain questions and I've got all the predicate down, Your Honor,
but I will proceed. 
 
The Court: Okay. If he says that he was uncooperative, then I'll
allow you going to just continue. But with regard to uncooperative I
guess but without leading. . . . 
 
[Defense counsel]: Well, Judge, my objection is she just
commented and had the officer comment on his exercising his Fifth
Amendment right to remain silent. And that's objectionable, the jury
should be instructed to disregard that and I ask for a mistrial. 
 
[Prosecutor]: Your Honor, we're getting into the fact that he
refused the breath test, and I'm certainly able to go into that. 
 
[Defense counsel]: The breath test is not what I'm talking about. 
She asked him if he refused to ask [sic] questions, and that is what
Miranda is about and that is what the Fifth Amendment is about, and she
commented on it in front of the jury and she had the officer comment on
it. I object and ask for an instruction to disregard and I make a motion
for a mistrial based on that. 

         The trial court then instructed the jury to "disregard any comments or
statements that were made by the officer and/or attorney in regards to that." It denied
Thompson's motion for mistrial. 
         Next, defense counsel cross-examined Hatch as to whether the precincts where
he worked have mobile video units or video facilities inside the station. Hatch
responded, "No, they do not." When defense counsel asked if the Nueces County jail
has video facilities, Hatch responded, "Yes, it does." Thompson complains of the
following exchange during the prosecutor's redirect: 
[Prosecutor]: Okay. Just for argument sake, would you have been
able to videotape him anyway? 
 
[Hatch]: More than likely not. He had already refused any
questions, and normally when –
 
[Defense counsel]: Your Honor, same objection that I made
previously on this issue. Counsel should have instructed her witness not
to say that. 
         During another bench conference, defense counsel stated that this was the
second time the prosecutor "or her witness has talked about his refusal to testify" in
direct violation of Thompson's right to remain silent. The trial court ruled, "Well, the
jury has already been instructed and I've already ruled on that, so just let's move
along." Thompson did not re-urge his request for a limiting instruction. He did not
move for a mistrial. 
C. Analysis
         The record shows that the prosecutor's question to Hatch on direct examination
regarding Thompson's cooperation in answering questions was asked and answered
before defense counsel objected. We hold that Thompson did not preserve his
objection to Hatch's testimony on direct examination regarding Thompson's post-arrest
silence. See Guzman, 521 S.W.2d at 269 (finding error waived when accused did not
object until three objectionable questions were asked and answered). In any event,
an effective instruction to disregard cures any harm flowing from a comment on an
accused's post-arrest silence. Waldo v. State, 746 S.W.2d 750, 754 (Tex. Crim.
App. 1988). We presume that an instruction to disregard is effective unless the facts
of the case "suggest the impossibility of withdrawing the impression produced on the
minds of the jury[.]" Id. (quoting Hatcher v. State, 65 S.W. 97, 98 (Tex. Crim.
App. 1901)). This is not such a case. 
         Further, defense counsel did not request a second instruction to disregard or
move for a mistrial after Hatch's nonresponsive answer on redirect. We hold that
Thompson waived any error in Hatch's answer to the prosecutor's question on redirect
regarding his ability to videotape Thompson. See Fuller, 827 S.W.2d at 926. 
         We overrule Thompson's first issue. We turn to his contention that the
prosecution elicited perjured testimony. 
III. PERJURED TESTIMONY
         In his second issue, Thompson asserts he was denied due process of law when
the prosecution knowingly presented perjured testimony to the jury. The State
acknowledges that the 14th amendment prohibits it from knowingly using perjured
testimony to obtain a conviction. See Vasquez v. State, 67 S.W.3d 229, 239 (Tex.
Crim. App. 2002). The State also concedes that knowledge of perjured testimony is
imputed to the State. Thus, the State agrees, due process prohibits prosecutors from
presenting testimony that any member of the "prosecution team," including police
officers, investigators, and prosecutorial personnel, knows to be false. Ex parte Fierro,
934 S.W.2d 370, 372 n.2 (Tex. Crim. App. 1996). However, the State argues,
Thompson bears the burden of showing actual perjured testimony. Thompson asserts
that the ultimate resolution of this issue rests on whether the violation was material
and, if material, how harmful it was. He argues that the misrepresentation materially
affected the jury's decision to convict him.  
A. The Alleged Perjury
         Thompson filed a motion for new trial asserting, in part, that Hatch made
material misrepresentations to the jury regarding the non-availability of video facilities
in Port Aransas. Thompson attached an affidavit from a private investigator to
demonstrate that Hatch had access to video equipment to record Thompson's
performance of field sobriety tests. The affidavit states:
As part of my duties, I interviewed three attorneys: Cecil Starcher, Scott
Ellison, and Douglas Tinker, who informed me that they have tried DWI
cases from Port Aransas where the arresting agency videotaped the
accused performing field sobriety tests. Additionally, I spoke with Port
Aransas Chief of Police, Don Perkins, who informed me that Port Aransas
officers, have access to video cameras for their investigative duties.

B. The Law
          "Perjured testimony is an obvious and flagrant affront to the basic concepts
of judicial proceedings." Butterfield v. State, 992 S.W.2d 448, 450 (Tex. Crim.
App. 1999). However, we agree with the State that the appellant bears the burden
of showing that testimony used by the State in fact was perjured. Hawkins v. State,
660 S.W.2d 65, 75 (Tex. Crim. App. 1983); Salazar v. State, 716 S.W.2d 733, 735
(Tex. App.–Corpus Christi 1986, pet. ref'd). 
C. Analysis
         The affidavit Thompson presented in his motion for new trial does not establish
that Hatch had access to video equipment during the critical time period, that is, at the
time of Thompson's arrest. Further, Thompson testified he asked Hatch to take him
to the Nueces County jail, where he "would at least have a video." The reasonable
inference from his testimony is that the Port Aransas jail did not have video equipment,
consistent with Hatch's testimony. We find that Thompson did not meet his burden
of showing that Hatch lied about the availability of video equipment on the date of
Thompson's arrest. See Hawkins, 660 S.W.2d at 75; see also Salazar, 716 S.W.2d
at 735. We hold there is no evidence the State used perjured testimony to obtain
Thompson's conviction. We overrule Thompson's second issue. 
IV. CONCLUSION
         Having overruled both of Thompson's issues, we affirm the trial court's
judgment and sentence. 

                                                                        ERRLINDA CASTILLO
                                                                        Justice
 
Do Not Publish.
Tex. R. App. P. 47.2(b).
 
Memorandum Opinion delivered and filed
this 29th day of July, 2004.