ACCEPTED
04-14-00678-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/18/2015 4:15:15 PM
KEITH HOTTLE
CLERK

**NO. 04-14-00678-CR**

**IN THE COURT OF APPEALS FOR THE
FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS**

_____

**RONJEE MIDDLETON,**
*Appellant*

**v.**

**THE STATE OF TEXAS,**
*Appellee*

_____

**ON APPEAL FROM THE 227TH JUDICIAL DISTRICT COURT
OF BEXAR COUNTY, TEXAS
CAUSE NUMBER 2013-CR-0666**

_____

**BRIEF FOR THE STATE**

_____

**NICHOLAS "NICO" LAHOOD**
**Criminal District Attorney**
**Bexar County, Texas**

**Jennifer D. Rossmeier**
**Assistant Criminal District Attorney**
**Bexar County, Texas**
**Paul Elizondo Tower**
**101 W. Nueva Street**
**San Antonio, Texas 78205**
**Phone: (210) 335-2734; Email: jennifer.rossmeier@bexar.org**
**State Bar No. 24079247**

**Attorneys for the State of Texas**

**<u>ORAL ARGUMENT REQUESTED</u>**

## IDENTITY OF THE PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a), the appellee supplements the appellant's list of parties as follows:

**APPELLATE STATE'S ATTORNEY**

**Jennifer D. Rossmeier**
State Bar No. 24079247
Assistant Criminal District Attorney
Paul Elizondo Tower
101 W. Nueva Street
San Antonio, Texas 78205
(210) 335-2734
Email: jennifer.rossmeier@bexar.org

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL ................................................................... ii

TABLE OF CONTENTS ............................................................................................... iii

TABLE OF AUTHORITIES .............................................................................................v

BRIEF FOR THE STATE ................................................................................................1

STATEMENT REGARDING ORAL ARGUMENT ................................................................1

STATEMENT OF THE CASE ...........................................................................................1

STATEMENT OF THE FACTS..........................................................................................2

SUMMARY OF THE ARGUMENT ...................................................................................3

ARGUMENT ...............................................................................................................4

**First Point of Error:** .....Appellant alleges that the trial court erred in overruling Appellant's objection to the jury shuffle under Batson v. Kentucky. ....................4

**State's Response:** ......Batson v. Kentucky does not apply to jury shuffles, and as such, the trial court did not err in overruling Appellant's objection to the State's request for a jury shuffle...................................................................................4

*Standard of Review: Error Analysis* ....................................................................4

*Applicable Law*....................................................................................................4

*Application of Law to the Present Record* ...........................................................5

**Second Point of Error:** ........... Appellant alleges the trial court erred in denying Appellant's motion for a mistrial after the State's witness testified about the Defendant's "prior charge."..................................................................................10

**State's Response:** The trial court did not err in denying Appellant's motion for a mistrial. .....................................................................................................10

*Standard of Review and Applicable Law* ...........................................................10

**Third Point of Error: ......**Appellant alleges the trial court erred in excluding the testimony of Appellant's witness and that this error had a substantial and injurious effect or influence in determining the jury's verdict............................12

**State's Response:** The trial court did not err in excluding testimony from one of Appellant's witness under Rule 614, and further, any error resulting from same is harmless. .....................................................................................................12

*Relevant Facts* ..................................................................................................12

*Standard of Review and Applicable Law* ...........................................................15

*Application of Law to the Present Record* ...........................................16

PRAYER ...................................................................................22

CERTIFICATE OF SERVICE AND COMPLIANCE ............................................24

# TABLE OF AUTHORITIES

## Cases

*Batson v. Kentucky* 476 U.S. 79 (1986)........................................................ 5, 6, 8, 9

*Bell v. State,* 938 S.W.3d 35 (Tex. Crim. App. 1996) ...............................................15

*Blanton v. State*, 2004 WL 3093219, at *1 (Tex. Crim. App. 2004).........................5

*Casey v. State*, 215 S.W.3d 870 (Tex. Crim. App. 2007)........................................16

*Chappell v. State*, 850 S.W.2d 508 (Tex. Crim. App. 1993)....................................4

*Garrett v. State*, No. 05-94-01144-CR, 1996 WL 283271, at *1 (Tex. App.—
Dallas May 29, 1996, pet. ref'd) (mem. op., not designated for publication)........6

*Gray v. State*, 233 S.W.3d 295 (Tex. Crim. App. 2007) ..........................................8

*Hatcher v. State*, 43 Tex.Cr.R. 237, 65 S.W. 97 (1901) ..........................................11

*Ladd v. State*, 3 S.W.3d 547 (Tex. Crim. App. 1999) ...............................................5

*Lagrone v. State*, 942 S.W.2d 602 (Tex. Crim. App. 1997) ....................................20

*Lockhart v. United States*, 476 U.S. 162 (1986) .......................................................8

*Miller-el v. Dretke*, 545 U.S. 231 (2005) ...................................................................7

*Ocon v. State*, 284 S.W.3d 880 (Tex. Crim. App. 2009)..........................................10

*Ovalle v. State*, 13 S.W.3d 774 (Tex. Crim. App. 2000).........................................10

*Reynolds v. State*, 03-10-00215-CR, 2010 WL 4670209, at *1 (Tex. App.—Austin
November 17, 2010, pet. dsm'd) (mem. op., not designated for publication) .......6

*Roberts v. State*, 77 S.W.3d 837 (Tex. Crim. App. 2002) ........................................5

*Routier v. State*, 112 S.W.3d 554 (Tex. Crim. App. 2003).....................................15

*Russell v. State*, 155 S.W.3d 176 (Tex. Crim. App. 2005).......................................4

*Russell v. State*, 181S.W.3d 176 (Tex. Crim. App. 2005) ........................................15

*Sims v. State*, 05-96-01395-CR, 1998 WL 744675, at *1
 (Tex. App.—Dallas October 27, 1998) ...................................................................6

*State v. Mechler*, 153 S.W.3d 435 (Tex. Crim. App. 2005) ....................................21

*Urbano v. State*, 808 S.W.2d 519
(Tex. App.—Houston [14th Dist.] 1991, no pet.)......................................................5

*Waldo v. State,* 746 S.W.2d 750 (Tex. Crim. App. 1988) ................................ 10, 11

*Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2007) .....................................16

*Wamsley v. State*, 2-06-089-CR, 2008 WL 706610, at *1 (Tex. App.—Fort Worth
 March 13, 2008, pet. ref'd) (mem. op., not designated for publication)...............6

*Watkins v. State*, 245 S.W.3d 444 (Tex. Crim. App. 2008)......................................7

*Webb v. State*, 766 S.W.2d 236 (Tex. Crim. App. 1989) .........................................15

*Williams v. State*, No. 02-13-00040-CR, 2014 WL 584892, at *1 (Tex. App.—Fort
 Worth February 13, 2014, no pet.) (mem. op., not designated for publication) ....6

**Statutes**
TEX. CODE CRIM. PROC. ANN. ART. 35.11 (West 2013) .............................................4

**Rules**
Tex. R. App. P. 38.2(a) .............................................................................................. ii

Tex. R. Crim. Evid. 403 ............................................................................................21

Tex. R. Crim. Evid. 404(a)(3)...................................................................................20

Tex. R. Crim. Evid. 614 ............................................................................................15

**NO. 04-14-00678-CR**

|  | § | **IN THE FOURTH DISTRICT** |
|---|---|---|
| **RONJEE MIDDLETON,** | § | |
| **APPELLANT** | § | |
| **VS.** | § | **COURT OF APPEALS** |
|  | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | **SAN ANTONIO, TEXAS** |

## BRIEF FOR THE STATE

To the Honorable Fourth Court:

Now comes, Nicholas "Nico" LaHood, Criminal District Attorney of Bexar County, Texas, and files this brief for the State.

## STATEMENT REGARDING ORAL ARGUMENT

The undersigned counsel has not yet had an opportunity to participate in oral argument before this Court and would respectfully request oral argument in the instant appeal for the purpose of gaining professional experience. Counsel also wants to ensure that this Court has a full and complete understanding of the facts and issues presented in this case.

## STATEMENT OF THE CASE

Ronjee Middleton ("Appellant") was indicted on one count of aggravated assault with a deadly weapon. (1 CR at 8) Appellant was tried by a jury and convicted of aggravated assault with a deadly weapon. (5 RR at 86) After a brief punishment hearing, the jury assessed Appellant's punishment at imprisonment for

1

twenty-seven years. (1 CR at 215-16)  Appellant timely filed a notice of appeal (1 CR at 211), and the trial court certified his right to appeal. (1 CR at 210)

## STATEMENT OF THE FACTS

Although the State does not endorse Appellant's "Statement of Facts," the State does not put forth its own factual assertions. *See* Tex. R. App. P. 38.2(a)(1)(B).  The facts found in the State's response to Appellant's points of error are referenced from the clerk's record and the reporter's record.

# SUMMARY OF THE ARGUMENT

**First Point of Error:**   Appellant alleges that the trial court erred in overruling Appellant's objection to the jury shuffle under *Batson v. Kentucky*.

**State's Response:**   *Batson v. Kentucky* does not apply to jury shuffles, and as such, the trial court did not err in overruling Appellant's objection to the State's request for a jury shuffle.

---

**Second Point of Error:**   Appellant alleges the trial court erred in denying Appellant's motion for a mistrial after the State's witness testified about the Defendant's "prior charge."

**State's Response:**   The trial court did not err in denying Appellant's motion for a mistrial.

---

**Third Point of Error:**   Appellant alleges the trial court erred in excluding the testimony of Appellant's witness and that this error had a substantial and injurious effect or influence in determining the jury's verdict.

**State's Response:**   The trial court did not err in excluding testimony from one of Appellant's witness under Rule 614, and further, any error resulting from same is harmless.

## ARGUMENT

**First Point of Error:**      Appellant alleges that the trial court erred in overruling Appellant's objection to the jury shuffle under *Batson v. Kentucky*.

**State's Response:**      *Batson v. Kentucky* does not apply to jury shuffles, and as such, the trial court did not err in overruling Appellant's objection to the State's request for a jury shuffle.

### *Standard of Review: Error Analysis*

Purported error concerning a jury shuffle is reviewed under the non-constitutional error analysis. Pursuant to Rule of Appellate Procedure 44.2(b), all nonconstitutional errors that do not affect the appellant's substantial rights are disregarded. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). A substantial right is affected "when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Id.*

### *Applicable Law*

The Texas Code of Criminal Procedure allows for the random reseating of jury panelists at either the request of the state or the defendant. TEX. CODE CRIM. PROC. ANN. ART. 35.11 (West 2013) Article 35.11 does not require the party requesting the shuffle to provide a reason for same. *Id.* Absent a showing of misconduct, only one shuffle is authorized under Article 35.11. *Chappell v. State*, 850 S.W.2d 508, 511 (Tex. Crim. App. 1993).  Although a jury shuffle is sometimes used strategically, its purpose is to ensure that members of the venire

4

panel are seated in a random order. *Roberts v. State*, 77 S.W.3d 837, 838 (Tex.

Crim. App. 2002).

### *Application of Law to the Present Record*

Appellant urges this court to hold that the three step analysis established in

*Batson v. Kentucky* 476 U.S. 79 (1986), applies to jury shuffles. (Appellant's Brief

at 22) Appellant recognizes that "[n]o Texas appellate court has ruled that *Batson*

applies to jury shuffles," but further states "[t]he issue remains open to definitive

resolution." (Appellant's Brief at 19) The issue, however, does not remain open to

definitive resolution. The Court of Criminal Appeals has clearly expressed, albeit

in dicta, that it does not endorse the argument that *Batson* extends to jury shuffles.

*Ladd v. State*, 3 S.W.3d 547, 563 n.9 (Tex. Crim. App. 1999) ("One scholar has

argued that, logically, *Batson* should extend to jury shuffles… We wish to make it

clear, however, that we do not endorse such a view.")*; see also Blanton v. State*,

2004 WL 3093219, at *28 n.17, (Tex. Crim. App. 2004) (mem. op., not designated

for publication) (citing to *Ladd* when addressing Blanton's argument regarding the

extension of *Batson* to jury shuffles).

No intermediate appellate court that has considered this issue has agreed

with Appellant either. *See Urbano v. State*, 808 S.W.2d 519, 520 (Tex. App.—

Houston [14th Dist.] 1991, no pet.) (court was reluctant to expand *Batson* to jury

shuffles generally, and more reluctant to do so where appellant had not requested

5

the jury be reshuffled); *Garrett v. State*, No. 05-94-01144-CR, 1996 WL 283271, at *7 (Tex. App.—Dallas May 29, 1996, pet. ref'd) (mem. op., not designated for publication) (holding that protections under *Batson* do not extend to jury shuffles); *Sims v. State*, 05-96-01395-CR, 1998 WL 744675, at *2-3 (Tex. App.—Dallas October 27, 1998) (stating *Batson* does not apply to jury shuffles and acknowledging that appellant did not exercise his right a shuffle); *Wamsley v. State*, 2-06-089-CR, 2008 WL 706610, at *20-21 (Tex. App.—Fort Worth March 13, 2008, pet. ref'd) (holding that no precedent supports an extension of *Batson* to jury shuffles); *Reynolds v. State*, 03-10-00215-CR, 2010 WL 4670209, at *5 (Tex. App.—Austin November 17, 2010, pet. dsm'd) (mem. op., not designated for publication) (noting that the Court of Criminal Appeals has expressed its disapproval of extending *Batson* to the jury shuffle); and *Williams v. State*, No. 02-13-00040-CR, 2014 WL 584892, at *3 (Tex. App.—Fort Worth February 13, 2014, no pet.) (mem. op., not designated for publication) (holding that *Batson* has not been extended to jury shuffles). It is clear that the authority in Texas does not lend itself to an extension of *Batson* to jury shuffles.

Appellant maintains that while *Batson* does not apply to jury shuffles, his rights under *Batson* were violated when the trial court granted the State's request to shuffle the jury and three African American males moved to the back of the venire. Appellant's argument is misplaced. As previously mentioned, the law is clear that

*Batson* does not apply to jury shuffles. While a jury shuffle is one element a court can consider in assessing discriminatory intent in jury selection, Appellant admits he is not accusing the State of having racially motivated reasons for requesting a jury shuffle in this case. (Appellant's Brief at 23); *see Miller-el v. Dretke*, 545 U.S. 231 (2005) (finding the State's use of a jury shuffle evidence of a broader pattern of racial discrimination in jury selection). There is nothing in the record detailing the racial composition of the venire or the jurors who were selected and Appellant's trial counsel did not challenge any of the State's preemptory strikes under *Batson*. The record simply does not support a finding that the State's request was motivated by discriminatory intent.

Appellant distinguishes the instant case from *Miller-El* and *Watkins v. State*, 245 S.W.3d 444 (Tex. Crim. App. 2008), by asserting that the jury shuffle in this case made it impossible to make a standard *Batson* challenge as to three African American males in the venire. It appears, then, that Appellant's primary issue on appeal is the way in which the venire was reordered after the shuffle—something neither the State nor trial court control. While Appellant would argue otherwise, jurors outside of the so-called "strike zone" at the start of voir dire can still be selected for jury service. During voir dire, trial counsel often exercise challenges for cause and veniremen provide other reasons to be excused from jury service. While the individuals toward the front of a venire might be more likely to serve as

jurors, the process of voir dire often changes the location of the "strike zone." Thus, it is always possible that panel members toward the back of the venire may be selected for the jury. Even if members of the venire who were of the same gender and racially similar to Appellant were shuffled to the back,[1] this was not error—it is simply the way a jury shuffle works. As discussed above, merely being moved to the back of the panel did not exclude these individuals from potential jury service.

Further, the Sixth Amendment guarantees the defendant only that the assembled venire panel will represent a "fair cross-section of the community." *Gray v. State*, 233 S.W.3d 295, 299 (Tex. Crim. App. 2007) (citing *Lockhart v. United States*, 476 U.S. 162, 174 (1986)). This right does not extend to the make-up of the petit jury. *Id.* Further, a defendant is not "entitled to a jury of any particular composition." *Id.* at 301. Because Appellant's venire was comprised of an adequate number of qualified persons to seat a jury, the trial court did not err in granting the State's request to shuffle the jury.

Preemptory challenges and jury shuffles are fundamentally different, and for that reason, *Batson* should not extend to jury shuffles. While the purpose of a preemptory challenge is to foreclose a prospective juror's service, a jury shuffle's only purpose is to guarantee that members of a venire are seated in a random order.

---

[1] Again, the record is silent as to the race and gender of the rest of the venire.

A jury shuffle does not prevent an individual from being selected for jury service, and as such, exercising the right to a jury shuffle does not invoke a defendant's Equal Protection Rights in the same way as the exercise of a preemptory strike. Because the effect of a jury shuffle is not analogous to that of a preemptory strike, it is proper to afford a defendant *Batson* protections with regard to preemptory challenges and decline to extend those same protections to the defendant when a party exercises its right to a jury shuffle.

Appellant also complains of the trial court's failure to inquire as to the State's motives in requesting a jury shuffle. As previously mentioned, no reason need be given for a jury shuffle and further, *Batson* does not apply to jury shuffles. As such, the State was not required to provide, nor was the trial court required to request, a reason for the jury shuffle.

Appellant argues that the appropriate remedy is to remand the case to the trial court for a *Batson* hearing. This is not the proper remedy for several reasons. First, *Batson* does not apply to jury shuffles, thus the three step analysis is not relevant to the State's request for a shuffle. Second, this is an unreasonable demand in that Appellant is asking this Court to require the State to recall why they requested a jury shuffle in a case from almost a year ago. Either party has a right to demand a jury shuffle and the trial court did not err in granting the State's request for same. It is worth noting that the trial court gave Appellant an opportunity to

reshuffle the panel and he declined. (3 RR at 37) There was no error associated with the trial court's grant of the State's request and any error this Court might find was harmless as the full venire always remained available for selection to the petit jury.

**Second Point of Error:** Appellant alleges the trial court erred in denying Appellant's motion for a mistrial after the State's witness testified about the Defendant's "prior charge."

**State's Response:** The trial court did not err in denying Appellant's motion for a mistrial.

### *Standard of Review and Applicable Law*

A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Evidence is viewed in the light most favorable to the trial court's ruling and only those arguments before the court at the time of its ruling are considered. *Id.* The trial court's decision to deny a mistrial will be upheld so long as it falls within the zone of reasonable disagreement. *Id.*

A mistrial is an extreme remedy, and as such, should only be granted when an error is highly prejudicial and incurable. *Id.* "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *see also Waldo v. State,* 746 S.W.2d 750, 752 (Tex. Crim. App.

1988). It is presumed that an instruction to disregard is effective, "unless consideration of the facts of the particular case 'suggest[s] the impossibility of withdrawing the impression produced on the minds of the jury.'" *Waldo*, 746 S.W.2d at 754 (quoting *Hatcher v. State*, 43 Tex.Cr.R. 237, 65 S.W. 97, 98 (1901)).

### *Application of Law to the Present Record*

On direct examination, the State and Noel Smith ("Mr. Smith") had the following exchange—

> [State:] Okay. What was Ronjee doing at this point?
> [Mr. Smith:] Well, he was in the store. He was in there talking to them.
> [State:] He was talking to the police?
> [Mr. Smith:] It was the same cops that arrested us to our prior -- our prior charge. That's how we remembered them. But, you know… (4 RR at 86)

The State then asked to approach the bench. (4 RR at 86) During the ensuing bench conference, Appellant objected to Mr. Smith's statement and the trial court excused the jury. (4 RR at 86-87) After the jury had been removed, the trial court sustained Appellant's objection regarding the extraneous offense. (4 RR at 90) Outside the presence of the jury, the court instructed Mr. Smith not to mention any "arrests or any conduct that is separate and apart from the alleged shooting in this case." (4 RR at 90) When the jury returned to the courtroom, the trial court said—

> If you will remember from the initial instructions that I read to you, ladies and gentlemen, there will be -- or might be times when I would ask you to consider -- either to consider testimony only for a limited purpose or there might be times when I would instruct you to disregard certain things that happened in the courtroom. This is going to be one of those times, and I will

11

tell you, ladies and gentlemen, regarding what I just said, please disregard any testimony there may have been about any prior arrests occurring before the arrest for the conduct which is the subject of this trial.

Appellant then moved for a mistrial, which was denied by the trial court. (4 RR at 92)

Here, the trial court's denial of the mistrial was proper. After Mr. Smith made the spontaneous statement regarding Appellant's prior charge, the State promptly approached the bench. There was no further discussion regarding the "prior charge" in the presence of the jury and there are no details in the record regarding the offense. Immediately after the jury returned to the courtroom, they were given an instruction to disregard the statement. Since it is presumed that the jury follows such instructions, any error created by Mr. Smith's inadvertent reference to the prior charge was cured, rendering a mistrial unnecessary.

**Third Point of Error:** Appellant alleges the trial court erred in excluding the testimony of Appellant's witness and that this error had a substantial and injurious effect or influence in determining the jury's verdict.

**State's Response:** The trial court did not err in excluding testimony from one of Appellant's witness under Rule 614, and further, any error resulting from same is harmless.

### *Relevant Facts*

Misti Smith ("Ms. Smith") accompanied Mr. Smith to the trial. (5 RR at 31) She entered the courtroom during the testimony of Danielle Barron ("Ms. Barron"), and the bailiff asked her if she intended to be a witness at trial. (5 RR at

12

33-34) Ms. Smith responded that the prosecutor told her she could be in the courtroom. (5 RR at 34) The bailiff again asked if she was going to be a witness and Ms. Smith said, "[n]o, I am here for my husband." (5 RR at 34) Based on her representation that she was not a witness, the bailiff permitted Ms. Smith to remain in the courtroom. (5 RR at 34)

Prior to beginning testimony, the court administered an oath to both Ms. Barron and Mr. Smith. In addition to swearing them in, he admonished them regarding the Rule. (4 RR at 18-19 and 65-66) At the conclusion of their testimony, the court reminded the witnesses of his prior instructions regarding the Rule. (4 RR at 65 and 4 RR at 99) Ms. Smith listened to the testimony of both Ms. Barron and Mr. Smith before leaving the courtroom. (5 RR at 31 and 34-35) At some point,[2] Ms. Smith approached Appellant's trial counsel and told him she had information regarding the case. (5 RR at 29) At the conclusion of the State's case, Appellant informed the court of his intent to call Ms. Smith as a witness. (5 RR at 28)

In addition to objecting to the proposed testimony under Rule 614, the State also objected to Ms. Smith's testimony under Texas Rules of Evidence Rules 401, 402, 403, 404, and 608. (5 RR at 47) After hearing from the State, Appellant's trial counsel, and the bailiff, the trial court sustained the State's objection to Ms.

---

[2] The record is unclear as to when Ms. Smith approached Appellant's counsel. The record does reflect, however, that she was present during the testimony of both Ms. Barron and Mr. Smith. (5 RR at 31 and 34-35)

Smith's testimony and denied Appellant's request to permit her to testify in violation of the Rule. (5 RR at 48)

For purposes of the record, Appellant made an offer of proof of Ms. Smith's proposed testimony. Ms. Smith testified she was present at the party on October 27, 2012. (5 RR at 42) When asked if she knew Ms. Barron, Ms. Smith responded, "[n]o sir. I—I've seen her. Me and her were talking, but I didn't know her personally." (5 RR at 43-44) Ms. Smith testified that Ms. Barron, "was drinking a lot of alcohol… [and] had a bottle of liquor in her hand." (5 RR at 44) Ms. Smith did not remember what kind of liquor Ms. Barron was drinking but knew the bottle contained hard liquor. (5 RR at 44)

Ms. Smith did not see how much liquor Ms. Barron consumed, but observed that she was stumbling and falling. (5 RR at 45) Ms. Smith further testified—

> [Appellant:] Did you see anything else --
> [Ms. Smith:] Yes, sir.
> [Appellant:] -- on her part, that would lead you to believe that she might have been intoxicated?
> [Ms. Smith:] Yes, sir. Like I said, I saw her fall. And then I saw her take two pills while she was drinking.
> [Appellant:] All right. Did you recognize the pills?
> [Ms. Smith:] Yes, sir.
> [Appellant:] To the best of your knowledge, what were they?
> [Ms. Smith:] Ecstasy. (5 RR at 45)

Ms. Smith never saw an altercation between Appellant and Jose Gonzales ("Mr. Gonzales"). (5 RR at 46) Ms. Smith maintained that if there had been an incident outside the home, she would have heard it before she left. (5 RR at 46)

14

Ms. Smith, however, did not hear or see any gunfire after the party and indicated, "[t]hey said that I pulled off right before the gunshots had started."(5 RR at 46-47)

### *Standard of Review and Applicable Law*

Texas Rules of Evidence Rule 614

The purpose of Rule of Evidence 614 ("the Rule") is to safeguard the testimony of one witness from influence by the testimony of another witness. *Russell v. State*, 181S.W.3d 176, 181 (Tex. Crim. App. 2005). While application of the Rule is mandatory upon request, the trial court's decision to allow testimony from a witness who has violated the Rule is discretionary. *See* Tex. R. Crim. Evid. 614; *see also Bell v. State,* 938 S.W.3d 35, 50 (Tex. Crim. App. 1996).

When a trial court considers disqualifying a defense witness for violation of the Rule, it must weigh both the interests of the state as well as the defendant's right to defend himself. *Routier v. State*, 112 S.W.3d 554, 589 (Tex. Crim. App. 2003) (citing *Webb v. State*, 766 S.W.2d 236, 244 (Tex. Crim. App. 1989)). When reviewing the trial court's decision to disqualify a witness, this Court applies the test established in *Webb* to determine:

> (1) if the rule was violated and the witness disqualified, were there particular circumstances, other than the mere fact of the violation, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the content of that witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense. *Id.*

15

Harm Analysis

The erroneous exclusion of evidence is generally nonconstitutional error and subject to analysis under Rule of Appellate Procedure 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). Nonconstitutional error which does not affect a defendant's substantial rights is disregarded. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). A conviction will not be reversed for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Id.*

***Application of Law to the Present Record***

Appellant argues that Ms. Smith should have been permitted to testify in violation of the Rule. (Appellant's Brief at 35) While the first *Webb* factor is not met in this case, the second factor is dispositive, and as such, the trial court's decision to exclude Ms. Smith's testimony was proper. Further, assuming the trial court erred in excluding same, any error is harmless and does not warrant reversal.

The *Webb* Test: The First Factor

Appellant's attorney informed the court that he "didn't know of [Ms. Smith's] identity or even her existence until she showed up in the courtroom… [and he] didn't know who she was or what she had to offer until the horse was out

of the barn, so to speak." (5 RR at 30) It appears that while Appellant's counsel knew Ms. Smith was in the courtroom, he knew neither her identity nor the significance of her presence in the courtroom. As such, there is nothing in the record to reflect that Appellant or his counsel had knowledge of the substance of Ms. Smith's testimony and consented to or procured her presence in the courtroom in violation of the Rule.

### The *Webb* Test: The Second Factor

Appellant maintains that Ms. Barron's testimony was central to proving the State's case and as such, her credibility should have been subject to attack by Ms. Smith's testimony. (Appellant's Brief at 35) Ms. Smith's limited testimony was not crucial to the defense, however, and its exclusion was proper. While Ms. Barron's testimony was important, testimony from other witnesses at trial provided substantial evidence of Appellant's guilt.

Kayla Edgmon ("Ms. Edgmon") threw the party that Appellant, Mr. Gonzales, the complainant, and Ms. Barron attended. (4 RR at 131) When Ms. Edgmon asked Appellant and his friends to leave the party, Appellant lifted his shirt, showing her a handgun in his waistband. (4 RR at 136) About twenty minutes after Appellant and his friends left the party, Ms. Edgmon heard multiple gunshots. (4 RR at 138)

Mr. Gonzales, the complainant, indicated that Appellant approached him when he was leaving the party. (4 RR at102-03) Appellant asked Ms. Gonzales "where the party was" and Mr. Gonzales sarcastically replied, "to the south side." (4 RR at 103) Appellant then pulled out a handgun and pointed it at Mr. Gonzales. (4 RR at 104) After Mr. Gonzales "backed off," Appellant hit him in the lip with the butt of the gun. (4 RR at 105) As Mr. Gonzales reached up to cover his face, he heard gunshots. (4 RR at 105-106) Mr. Gonzales testified that the gunshots were aimed in his direction and one of the gunshots hit a vehicle next to him. (4 RR at 106) Mr. Gonzales heard four or five gunshots. (4 RR at 106)

Angela Salvatierra ("CSI Salvatierra"), a crime scene investigator with the San Antonio Police Department ("SAPD"), collected evidence at the scene. (4 RR at 151-52) CSI Salvatierra collected five spent shell casings—consistent with the five gunshots Ms. Barron and Mr. Gonzales heard. (4 RR at 40, 106, and 157) She further collected a gunshot residue ("GSR") kit from Appellant shortly after the incident. (4 RR at 159-60) CSI Salvatierra also collected a red and white bandanna and a .380 firearm from the passenger side of a vehicle in which Appellant had been riding. (4 RR at 79-80, 93-94, and 162-63) Both Ms. Edgmon and Ms. Barron testified that Appellant had been wearing a red and white bandanna on October 27, 2012. (4 RR at 41 and 138)

18

Glenn Michalek, a Uniformed Evidence Detective with SAPD, collected a GSR kit from Mr. Smith and Brandon Linson. (5 RR at 10-11) Michael Martinez ("Mr. Martinez"), a trace evidence supervisor for the Bexar County Crime Lab ("crime lab"), tested all three GSR kits. (5 RR at 15-16) The results of the GSR tests were negative for both Mr. Smith and Brandon Linson. (5 RR at 17-18) The GSR test was positive for both of Appellant's hands, allowing Mr. Martinez to conclude that Appellant "may have discharged a firearm, handled a discharged firearm, or was in close proximity to a discharged firearm" on the night in question. (5 RR at 20)

Tammi Sligh ("Ms. Sligh"), a fire and tool mark examiner with the crime lab, also testified at trial. Ms. Sligh tested the .380 collected by CSI Salvatierra and introduced into evidence at trial. (4 RR at 190) Ms. Sligh verified the firearm was operable and testified that, in her expert opinion, all five cartridge cases collected at the scene had been fired from the .380. (4 RR at 191-93) Mr. Smith testified that Appellant owned a .380 firearm. (4 RR at 84)

In light of the evidence presented by the State at trial, Ms. Smith's proposed testimony was not crucial to Appellant's defense. The substance of Ms. Smith's testimony only established that she saw Ms. Barron drinking and ingesting what she "knew" to be ecstasy. Ms. Smith could not offer anything relevant to the

ultimate issue of guilt in this case as she had not seen nor heard the disturbance after the party. Therefore, it was not error for the trial court to exclude same.

Further, even if this Court finds that the trial court erred in excluding Ms. Smith's testimony, any error from its exclusion would be harmless. An examination of the entire record does not support the proposition that excluding Ms. Smith's testimony had a substantial and injurious effect or influence in determining the jury's verdict.

Other Objections

It appears from the record the trial court sustained the State's objection to Ms. Smith's testimony under Rule 614. Because the record is not definitive as to this point, the State's other objections will be dealt with herein.

*Character Evidence: Rules 404 and Rule 608(b)*

Here, Appellant sought to introduce character evidence of a witness, and as such, Rule 608 controls. *See* Tex. R. Crim. Evid. 404(a)(3). Generally, any attempt to impeach a witness through specific instances of conduct is improper under Rule 608(b). It is permissible, however, to impeach a witness for lack of capacity. *Lagrone v. State*, 942 S.W.2d 602, 612-13 (Tex. Crim. App. 1997). The proponent of such evidence must prove that the witness's capacity to perceive the events was physically impaired by intoxication *at the time* of his or observation of the witnessed events. *Id.*(emphasis added)

20

Ms. Smith's testimony did not establish that Ms. Barron's capacity was impaired by intoxication at the time of her *observation* of the events recounted in her testimony. At best, Ms. Smith's vague testimony established that, at some point during the evening, Ms. Barron drank hard liquor from a bottle and took two pills known to Ms. Smith to be ecstasy. Ms. Smith offered no additional details, including any information about the timing of these acts. Ms. Smith left the scene before the shooting, and as such, could not and did not testify as to Ms. Barron's condition immediately before or contemporaneous with the incident. Thus, her testimony could not affirmatively establish that Ms. Barron's perception was impaired by intoxication at the time she witnessed Appellant shooting at Mr. Gonzales.

*Rule 403*

Rule 403 provides a list of exceptions that might prevent otherwise relevant evidence from admission at trial. Rule 403 asks the trial court to weigh the probative value of proffered evidence against, among other things, the dangers of confusion of the issues or misleading the jury. Tex. R. Crim. Evid. 403. The trial court's decision to exclude evidence on the basis of Rule 403 is reviewed for abuse of discretion. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The relevant inquiry for the reviewing courts are—(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way;

(3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Id.* at 440.

While relevant, Ms. Smith's testimony was not probative of Appellant's innocence and the evidence was not crucial to his defense, as demonstrated above. The evidence does not appear to be of the character to impress the jury in an irrational yet indelible way, though it had potential to confuse the jury if introduced. If the trial court had permitted Ms. Smith to testify, the State would have likely inquired as to her violation of the Rule and surrounding circumstances on cross-examination, which may have confused the issues in the case or misled jurors. As such, the trial court did not abuse its discretion in excluding Ms. Smith's proposed testimony under Rule 403.

*Harm Analysis*

Should the court find that the trial court erred in excluding Ms. Smith's proposed testimony, any error resulting from same is harmless. An examination of the entire record does not support the proposition that the exclusion of Ms. Smith's limited testimony had a substantial and injurious effect or influence in determining the jury's verdict.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State of Texas submits that the judgment of the trial court should, in all things, be AFFIRMED.

22

Respectfully submitted,

NICHOLAS "NICO" LAHOOD
Criminal District Attorney
Bexar County, Texas

*/s/ Jennifer D. Rossmeier*

_____

Jennifer D. Rossmeier
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva Street
San Antonio, Texas 78205
Phone: (210) 335-2734
Email: jennifer.rossmeier@bexar.org
State Bar No. 24079247

*Attorneys for the State*

## CERTIFICATE OF SERVICE AND COMPLIANCE

I, Jennifer D. Rossmeier, hereby certify that the total number of words in appellee's brief is 6,127. I also certify that a true and correct copy of the above and foregoing brief was served via electric service to Michael D. Robbins at mrobbins@bexar.org on the 18th day of May, 2015.

*/s/ Jennifer D. Rossmeier*

_____
Jennifer D. Rossmeier
Assistant Criminal District Attorney